# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

BRIAN A. DARTT *vs.* BROWNING-FERRIS INDUSTRIES, INC.
(MASS.).

Suffolk. November 6, 1997. - February 26, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Handicapped Persons. Anti-Discrimination Law,* Handicap, Prima facie case, Termination of employment. *Employment,* Discrimination, Termination. *Statute,* Construction. *Practice, Civil,* Instructions to jury, Presumptions and burden of proof, Damages. *Workers' Compensation Act,* Claim. *Evidence,* Relevancy and materiality. *Damages,* Punitive. *Americans with Disabilities Act.*

This court concluded, upon consideration of the plain language of G. L. c. 151B, § 4 (16), the legislative history of that statute, the cognate provisions of art. 114 of the Amendments to the Massachusetts Constitution, and Federal cases interpreting the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., that a plaintiff alleging handicap employment discrimination in violation of

G. L. c. 151B, § 4 (16), need not establish, as part of his prima facie case, that he was terminated or otherwise adversely treated by his employer "solely" because of his handicap. [6-11]

In a handicap discrimination case, the judge's instructions to the jury, read as a whole, correctly informed the jury of the plaintiff's burden of proof. [12]

In a handicap discrimination case in which the plaintiff alleged that the defendant terminated the plaintiff's employment to avoid payment of workers' compensation benefits, the trial judge's refusal to instruct the jury on the defendant's payment obligations under the workers' compensation statute constituted prejudicial error requiring a new trial. [12-14]

At the trial of an employment discrimination case, the trial judge erred in admitting in evidence an outdated application form, used by the defendant prior to the effective date of the Americans with Disabilities Act, to show the defendant's "state of mind." [14-16]

At the trial of a handicap discrimination case, there was sufficient evidence for the jury to conclude that the defendant employer regarded the plaintiff as having a physical impairment and that the employer terminated the plaintiff's employment on that basis. [16-17]

In a handicap discrimination case, where there was no admissible evidence that the defendant employer's conduct was outrageous in any respect, the judge should not submit the question of punitive damages to the jury in the trial of the case after remand. [17-18]

CIVIL ACTION commenced in the Superior Court Department on December 31, 1993.

The case was tried before *Carol S. Ball*, J., and posttrial motions were heard by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Paul J. Murphy* (*Theodore E. Daiber* with him) for the defendant.

*Kevin G. Powers* for the plaintiff.

MARSHALL, J. We clarify today the prima facie standard a plaintiff must meet to establish liability in a case involving a claim of handicap discrimination in violation of G. L. c. 151B, § 4 (16).[1] The defendant, Browning-Ferris Industries, Inc. (Mass.) (BFI), appeals from a jury verdict that it unlawfully fired the plaintiff, Brian

---

[1]The plaintiff also alleged a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (1994) (count III of his complaint), and the Rehabilitation Act of 1973, 29 U.S.C. § 706 (count IV). A judge in the Superior Court granted defendant Browning-Ferris Industries, Inc.'s (BFI's) motion for summary judgment as to those two counts.

A. Dartt, because of a handicap, an earlier work-related injury to his back. BFI maintained that Dartt's prior injury played no role in its decision to terminate him, and that he was terminated because he was grossly negligent when a BFI tractor-trailer that he was operating flipped over. The jury awarded Dartt $83,000 in back pay, $16,000 in emotional distress damages, and $175,000 in punitive damages. BFI filed posttrial motions and Dartt filed a motion for attorney's fees. After a hearing, the judge denied BFI's motions and awarded Dartt substantially all of his attorney's fees. We granted BFI's application for direct appellate review.

We rule that to establish a prima facie case of unlawful employment discrimination on the basis of handicap under G. L. c. 151B, § 4 (16), a plaintiff must present credible evidence that (1) he is handicapped within the meaning of the statute; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation; (3) he was terminated or otherwise subject to an adverse action by his employer; and (4) the position he had occupied remained open and the employer sought to fill it.[2] See *Beal* v. *Selectmen of Hingham*, 419 Mass. 535, 541 (1995). See also *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441 (1995). It is not a requirement that a plaintiff show, as part of his prima facie case, that he was terminated "solely" because of his handicap. In this case the judge's instructions were generally consistent with these requirements. We nevertheless conclude that a new trial is required because two of the judge's rulings, described below, constitute prejudicial error. We also conclude that Dartt presented insufficient evidence to support the punitive damages awarded to him.

## I

From 1985 until 1992, when he was terminated, Dartt was employed by BFI as a truck driver, first in Colorado and later in Tyngsborough. Dartt operated a ten-wheel tractor-trailer used to transport and dump large loads of waste. In March, 1990, Dartt injured his back when he fell from a trailer while attempting to secure a canvas flap. BFI's safety review board determined that Dartt was not at fault for that accident. As a result of his injury, Dartt was required to undergo two operations and he was unable to work for almost two years. BFI paid Dartt $61,389 in workers' compensation benefits for that injury.

On May 19, 1992, approximately two months after returning

---

[2] We use the male pronoun because in this case the plaintiff is a man.

to full-time work, Dartt had another accident that precipitated this lawsuit. On that day, the vehicle that Dartt was operating flipped over while he was dumping a load of sludge at a landfill in Rochester, New Hampshire. After he had backed the vehicle to an appropriate location, Dartt engaged the hydraulic dumping mechanism located in the cab of the vehicle to raise the trailer bed. He aborted that initial process when he observed through the vehicle's mirrors that the trailer was rising unevenly. Dartt then moved the vehicle forward to what he thought was more level ground, and commenced the dumping procedure a second time. He testified that, while he watched through two side mirrors as the trailer rose, he reached down for a soda located in a plastic lunch box placed to the right of the driver's seat. To retrieve the soda, Dartt removed the lid on the plastic cooler and then transferred the soda bottle from one hand to the other. Dartt testified that "the next thing [he] knew," the truck had flipped and was lying on its side. Dartt did not sustain any injury, but the accident caused damage to the tractor-trailer.

Dartt immediately telephoned Ernest G. Stone, the district safety manager for BFI, and informed him of the accident. Stone traveled to the landfill to investigate. Dartt told Stone that the vehicle had tipped over while he was reaching for the soda. He testified that he also told Stone that, in his view, the sludge load had stuck to one side of the trailer, creating an imbalance that had caused the vehicle to tip over.

The following morning BFI's management review board consisting of Stone, Ronald Greenwood, BFI's district manager, and Donald Butler, Dartt's immediate supervisor, met to discuss the accident. Based on his observations at the site and on his interview with Dartt, Stone informed the others that it was his view that Dartt had not been paying attention to what he was doing when the truck flipped on its side. Greenwood directed Stone to terminate Dartt for violating BFI's safety policy.[3] A few days later, at his request, Dartt met with Greenwood and Butler to explain the accident. Greenwood told Dartt that he would look into the matter, but Dartt heard nothing further from him.

---

[3]BFI's safety policy, which Dartt signed as a condition of his employment, required him to use "maximum care and good judgment." Greenwood testified that he terminated Dartt because he did not believe that Dartt could have kept his eyes on the trailer while reaching for a soda, and that in his judgment, a vehicle such as the one operated by Dartt was "a lethal weapon out on the highway," and he could not afford to tolerate even occasional carelessness by a driver while operating it.

On May 31, 1992, after Stone had told Dartt he was terminated, BFI's safety review board met to review the accident. The role of the safety review board in employee discipline matters, as described in BFI's policy and procedures manual, is to determine whether an accident was "preventable." The board, composed of managers and other employees, reviews all aspects of the accident with the driver involved, then presents its findings to the district manager for evaluation, and possible disciplinary action, including termination. The driver also is informed of the board's decision, and he may appeal it. The manual provides that after a third "preventable" accident in any twelve-month period, a driver "may" be subject to discharge.[4] In this case the board concluded that the accident could have been prevented by Dartt. Although the manual provided that "the board will review all aspects of the accident with the driver involved," Dartt was not informed of the board meeting. Other than this incident, Dartt had a safe driving record, as documented by BFI.

Dartt never claimed that he was injured in the second accident. He argued that he was fired because BFI was concerned that he might file a new claim for workers' compensation, and that BFI wanted to avoid paying him any such compensation. There was evidence that before this accident BFI was concerned about containing what it perceived were escalating workers' compensation claims: Dartt testified that, at one of the weekly safety meetings that he was required to attend, Stone told a group of employees that the number of workers' compensation claims had to be reduced.[5] In addition, while Dartt was on the earlier disability leave of absence, BFI's workers' compensation administrator told Stone that BFI would have "exposure for future temporary partial benefits in the event

[4]The BFI manual also provides that the district manager (Greenwood) may discharge an employee forthwith if he determines that the employee has violated company policy. Greenwood testified at trial that he also had the authority to override the board.

[5]Although there was no objection to this evidence, we fail to see its relevance to the claim of handicap discrimination made by Dartt. As a matter of company policy, BFI required all drivers to attend weekly safety meetings, and it was Dartt's own testimony that Stone's remark occurred in the context of BFI's safety maintenance program. Evidence of employer attempts to contain or reduce workers' compensation claims, without more, is not probative of handicap discrimination. It is proper, for example, for an employer to urge workers to comply with safety regulations or to exercise appropriate cautionary measures when handling heavy-duty equipment such as the vehicle in this case, even if one purpose of doing so is to contain or reduce workers' compensation claims.

that [BFI] would not be able to accommodate [Dartt] on a permanent basis in a position within his restrictions."[6]

## II

BFI claims that the judge erred in her instructions to the jury on the elements of a prima facie case of handicap discrimination, and that there was insufficient evidence as a matter of law to support a finding of discriminatory termination. We address first BFI's challenge to the judge's instructions. In cases of handicap discrimination brought under G. L. c. 151B, § 4 (16), we use the familiar three-stage order of proof that we have recognized in cases alleging disparate treatment[7] under G. L. c. 151B, § 4 (1), which prohibits discrimination "because of the race, color, religious creed, national origin, sex, sexual orientation . . . or ancestry" of an individual.[8] *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 821 (1997). At issue here is the first stage order of proof — the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441 (1995).

General Laws c. 151B, § 4 (16), provides that an employer may not "dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, *because of* his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation" (emphasis supplied). The parties dispute how the term "because of" affects a plaintiff's prima facie burden of proof. At trial, relying on *Garrity* v. *United Airlines, Inc.*, 421 Mass. 55 (1995), and *Tate* v. *Department of*

---

[6]At trial, BFI objected to the introduction of this evidence, a point it does not pursue here. It is not clear to us on what basis the judge admitted the evidence. Evidence that an employer seeks to have an injured worker return to work once he is physically able to do so (as happened in Dartt's case) is not probative of handicap discrimination.

[7]Cases of disparate impact have a different burden of proof. See *Brunner* v. *Stone & Webster Eng'g Corp.*, 413 Mass. 698, 699-700 (1992). Dartt made no claim of disparate impact, and we are not here concerned about the standard of proof in those cases.

[8]Where, as here, there is no direct evidence of discrimination, we apply the three-stage burden-shifting framework articulated in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441 (1995); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130. 134-136 (1976), citing *McDonnell Douglas, supra.*

*Mental Health*, 419 Mass. 356, 361 (1995), BFI asked the judge to charge the jury that in his prima facie case Dartt had to prove that he was terminated "solely because of his handicap." The judge rejected BFI's request. Relying on *Blare, supra,* she gave the following charge to the jury:

> "To recover, the plaintiff must prove at the outset the following by a fair preponderance of the credible evidence, first, that the plaintiff had a 'handicap' at the relevant time; second, that the plaintiff was a 'qualified handicapped person'; and third, that the plaintiff was terminated by the defendant."

On appeal, BFI argues further that any dispute concerning this issue was put to rest by our recent opinion in *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813 (1997), where we said that it is a plaintiff's burden to establish in his prima facie case that he was terminated "solely" because of his handicap.

We recognize that some of our earlier decisions concerning a plaintiff's prima facie burden in a case of handicap discrimination may have been the cause of confusion, for we previously have not been consistent in our descriptions of that burden.[9] We sometimes have said that a plaintiff must establish that he was terminated "in spite of [his] qualifications," see, e.g., *Whalen* v. *NYNEX Info. Resources Co.*, 419 Mass. 792, 795-796 (1995); *Beal* v. *Selectmen of Hingham*, 419 Mass. 535, 541 (1995), or that he was fired "because of" a handicap, see, e.g., *Tate, supra* at 361-362, while at other times we have said that to establish a prima facie case a plaintiff must demonstrate that he was fired "solely because of his handicap." See, e.g., *Labonte, supra* at 821; *Garrity, supra* at 60; *Tate, supra* at 362. We now make clear that as part of his prima facie case, a plaintiff alleging a violation of G. L. c. 151B, § 4 (16), need not establish that he was terminated (or received some other adverse treatment from his employer) "solely" because of his handicap.[10]

---

[9]BFI recognizes, as it must, that in cases alleging disparate treatment under G. L. c. 151B, § 4 (1), we have never used the term "solely" to describe a plaintiff's prima facie burden. See, e.g., *Blare, supra* at 441; *White* v. *University of Mass. at Boston*, 410 Mass. 553, 557 (1991).

[10]The handicap discrimination cases in which we made reference to the term "solely" did not turn on the third element of a plaintiff's prima facie burden. In *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813 (1997), the

We reach this conclusion for several reasons. We commence our analysis, appropriately, with the plain language of the statute. *Massachusetts Bay Transp. Auth.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.*, 397 Mass. 734, 738 (1986). General Laws c. 151B, § 4 (16), does not use the term "solely." We discern no other similarly restrictive language in the statutory scheme, and we hesitate to rewrite the statute judicially to import such a restriction. In interpreting the substantially identical causal language in the context of Title VII, the United States Supreme Court concluded that "because of" does not mean "solely because of." *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 241 (1989) (plurality opinion). While no opinion of the Court garnered a majority of votes, all the Justices agreed on this point. See *id.* at 241 (plurality opinion); *id.* at 258-259 (White, J., concurring in the judgment); *id.* at 262-263 (O'Connor, J., concurring in the judgment); *id.* at 284 (Kennedy, J., dissenting). Writing for the plurality, Justice Brennan noted that "since we know that the words 'because of' do not mean '*solely* because of,' we also know that Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations" (footnote omitted; emphasis in original). *Id.* at 241. Similarly, we will not read the restrictive term "solely" into G. L. c. 151B, § 4 (16).

The legislative history confirms that our interpretation is consistent with what the Legislature intended. Prior to adopting St. 1983, c. 533, § 2, the 1983 amendment that inserted § 4 (16) into G. L. c. 151B, the Legislature rejected proposed amendments that would have prohibited discrimination "solely because of" a handicap. See, e.g., 1981 Senate Doc. No. 208; 1981 House Doc. No. 353; 1981 House Doc. No. 485; 1981 House Doc. No.

employer had conceded that the plaintiff was terminated "solely" because of his handicap, and argued on appeal only that the plaintiff's disability made him "unable to perform the essential functions of the job." *Id.* at 821. In *Garrity* v. *United Airlines, Inc.*, 421 Mass. 55 (1995), it was also undisputed that the plaintiff was fired "solely" because of her handicap, alcoholism. The dispute concerned whether or not the plaintiff was qualified for the position, and we noted that we would "limit our discussion to that subject." *Id.* at 60. *Tate* v. *Department of Mental Health*, 419 Mass. 356 (1995), concerned the insufficiency of the evidence of pretext. We referred, in passing, to the prima facie case, saying that a plaintiff must demonstrate that she was terminated "solely on the basis of her handicap." *Tate, supra* at 361-362. We also said the plaintiff had to prove she was terminated "because of her handicap." *Id.* at 362. None of these cases includes any meaningful analysis of whether "because of" in this context means "solely because of."

3537; 1980 House Doc. No 650.[11] BFI is correct that the legislative history does not elucidate why the Legislature rejected each of these competing bills. But we will not add to a statute a word that the Legislature had the option to, but chose not to, include. *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 706 (1984). Nor does our conclusion ignore the cognate amendment to the Massachusetts Constitution enacted a few years before the statutory amendment at issue here. Article 114 of the Amendments to the Massachusetts Constitution, enacted in 1980, provides in relevant part: "No otherwise qualified handicapped individual shall, *solely* by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth" (emphasis added). A statute may provide greater protection than a constitutional counterpart. Here, the statute protects fully those persons covered under art. 114.[12]

Were we to require the plaintiff to prove at the prima facie stage that he had been discriminated against "solely because of a handicap," we would be imposing on him a greater burden at the first stage than he is required to meet at the third stage of proof. Conversely, the standard we adopt today achieves the purpose we intend by requiring a plaintiff to demonstrate a prima facie case: to "eliminate[] the most common nondiscriminatory reasons for the plaintiff's rejection." *Texas Dep't of Community Affairs* v. *Burdine*, 450 U.S. 248, 254 (1981). See *Blare, supra* at 441.

We are also guided in our resolution by interpretations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (1994) (ADA),[13] even though that statute was enacted in 1991,

---

[11]As Justice Brennan noted in *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 241 n.7 (1989), Congress similarly had rejected a proposed amendment to Title VII that would have modified § 703(a) to provide that liability could be established only if an employment decision was taken "solely because of" an impermissible motive. See 110 Cong. Rec. 2728, 13,837 (1964).

[12]In *Tate* v. *Department of Mental Health*, 419 Mass. 356, 365 (1995), we held that a claim based on G. L. c. 151B precludes a claim arising directly under art. 114, because the statute provides adequate relief to redress a claim of handicap discrimination by an employer. See *Conway* v. *Boston Edison Co.*, 745 F. Supp. 773, 779 (D. Mass. 1990) ("Although a limited right of action under [art. 114] has . . . been recognized, I believe that the Supreme Judicial Court would restrict it to cases that fall outside the scope of any remedial statute . . . . Because ch. 151B supplies a fully adequate procedure to redress handicap discrimination by an employer, it precludes a right of action arising directly under the constitution").

[13]While we do on occasion consider judicial interpretations of Federal civil rights statutes instructive in our analyses of G. L. c. 151B, we have not

after the enactment of G. L. c. 151B, § 4 (16). The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). Because that causal language is substantially similar to the prohibition of G. L. c. 151B, § 4 (16), that an employee may not be discriminated against because of his handicap, judicial analyses of the ADA are helpful.[14] The decision of the United States Court of Appeals for the First Circuit in *Jacques* v. *Clean-Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir. 1996), is particularly instructive. In that case, the court concluded, as we have, that a plaintiff could prove a claim of discrimination under the ADA by using the three-stage framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).[15] The *Jacques* court then outlined a five-part

always done so. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 440-441 (1996).

[14]BFI argues that we should look instead to cases interpreting the Rehabilitation Act of 1973, 29 U.S.C. §§ 706, 791-794 (1994). The Rehabilitation Act provides: "No otherwise qualified individual with a disability in the United States . . . shall, *solely by reason* of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity [that receives Federal support]" (emphasis supplied). 29 U.S.C. § 794(a). As we describe above, prior to adopting the 1983 amendment to G. L. c. 151B, the Legislature rejected several bills that contained the term "solely." See *supra* at 8. We have considered instructive interpretations of the Rehabilitation Act where the issue concerned a provision of G. L. c. 151B, § 4 (16), similar to a provision of that Federal statute. See, e.g., *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 382 (1993) (term "qualified handicapped person" in G. L. c. 151B, § 4 [16], sufficiently similar to term "otherwise qualified individual with a handicap" under Rehabilitation Act to make judicial interpretations of that provision of Rehabilitation Act helpful). See also *Garrity*, *supra* at 59; *Tate*, *supra* at 361 (making reference to Rehabilitation Act because plaintiff had also brought a claim in that case under Rehabilitation Act). Those considerations do not apply here. Cf. *Labonte*, *supra* at 816 n.5 (considering Federal courts' interpretation of the ADA to determine whether estoppel should be applied to a plaintiff's claim under G. L. c. 151B, § 4 [16]).

[15]Alternatively, a plaintiff could forgo the *McDonnell Douglas* framework, and show "[f]irst, that he [or she] was disabled within the meaning of the Act. Second, that with or without reasonable accommodation he [or she] was able to perform the essential functions of [the] job. And, third, that the employer discharged him [or her] in whole or in part because of his [or her] disability. *Katz* [v. *City Metal Co.*, 87 F.3d 26, 30 (1st Cir. 1996).]" *Jacques* v. *Clean-Up Group, Inc.*, 96 F.3d 506, 511 (1st Cir. 1996). In *Labonte*, *supra* at 821, we noted, without objection, that "[t]he law firm consolidates the steps by offering that its reason for termination was that the plaintiff's disability made him unable to perform the essential functions of the job."

test a plaintiff must meet to establish a prima facie case of handicap discrimination:

"[A] plaintiff must first prove by a preponderance of the evidence that he or she (i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result."

*Id.* at 511. See *EEOC* v. *Amego, Inc.*, 110 F.3d 135, 141 n.2 (1st Cir. 1997). The United States Court of Appeals for the Eighth Circuit uses a similar test to establish a prima facie case of disability discrimination under the ADA. See *Aucutt* v. *Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1318 (8th Cir. 1996) (third and final element of prima facie case is that plaintiff "has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises").[16] For all these reasons we hold that Dartt was not required to demonstrate at the prima facie stage that he was terminated by BFI "solely" because of his handicap. There was no error in the judge's instructions.[17]

---

[16]In contrast, the United States Court of Appeals for the Fifth Circuit uses the more restrictive "solely because of" standard for a prima facie case under the ADA. See *Still* v. *Freeport-McMoran, Inc.*, 120 F.3d 50, 51-52 (5th Cir. 1997). See also *Despears* v. *Milwaukee County*, 63 F.3d 635 (7th Cir. 1995) (summary judgment for employer proper because alleged disability was not sole cause of plaintiff's demotion). None of these courts has explained why the particular prima facie test adopted is appropriate. Cf. *McNely* v. *Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076-1077 (11th Cir. 1996), cert. denied, 117 S. Ct. 1819 (1997) (analyzing why ADA does not import "solely because of" standard for plaintiff's ultimate burden of causation).

[17]The judge did not include in her instruction the fourth element of Dartt's prima facie burden. The parties dispute the reason for this. BFI had argued that, because the law precludes an employer from ascertaining the handicap status, if any, of a prospective hire, there was no evidence, nor could there be, that Dartt was replaced by a nonhandicapped person. It is not necessary for a handicapped plaintiff to demonstrate that his replacement was not handicapped. It is sufficient for him to demonstrate that his position remained open and the employer sought to fill it. A defense by BFI that Dartt was terminated because of a reduction in force is not at issue here, and there was evidence that BFI had continued to hire drivers after Dartt was terminated. The error, if any, was harmless. It would be advisable on

BFI also argues, in passing, that the jury instructions as a whole did not require the jury to find affirmatively at any stage that BFI was motivated by discrimination. We agree that the burden of persuasion rests with the plaintiff at all times. *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 445 (1995). We have said that at the third stage of proof, "the presumption of discrimination vanishes, and the burden returns to the plaintiff to persuade the court, by a fair preponderance of the evidence, that the defendant's proffered reason for its employment decision was not the real reason, but is a pretext." *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997). We have also said that "[t]he plaintiff bears the burden of persuasion on the ultimate issue of discrimination . . . and therefore must 'produce evidence sufficient to support a jury verdict that it was more likely than not that the articulated reason was pretext for actual discrimination.' " *Id.* at 128, quoting *Blare, supra* at 447. Read as a whole, we conclude that the judge's instructions correctly informed the jury of Dartt's burden.[18]

### III

BFI also argues that the judge committed prejudicial error in refusing to instruct the jury on BFI's obligations under the workers' compensation statute, G. L. c. 152, §§ 26, 27, and that she erroneously admitted in evidence two legally irrelevant and, it is argued, highly prejudicial, outdated employment application forms previously used by BFI. We review these claims.

remand for the judge, as in all cases, to instruct the jury on the plaintiff's prima facie burden in full.

[18]The judge's instructions to the jury included the following:

"We have now got the plaintiff showing the first three things, handicap, qualified, and termination. Then we have the defendant who is supposed to articulate a legitimate, nondiscriminatory reason. Once the defendant has done that, the *plaintiff must prove by a preponderance of the evidence the final part in this test* which is that but for the plaintiff's handicap, the defendant would not have terminated the plaintiff. If the plaintiff proves by a fair preponderance of the credible evidence that the defendant's asserted reason for termination was not the real reason, in other words, that the asserted reason was false or a pretext, then you must find for the plaintiff." (Emphasis added.)

The judge also instructed as follows: "[T]he third part of the larger test, *again with the plaintiff having the burden of proof for all of this*, is that the business reason was not the real reason for the termination . . . ." (Emphasis added.) She later again instructed "the plaintiff has the burden to prove one final element, that but for plaintiff's handicap, the defendant would not have terminated the plaintiff."

At the time of his second accident, Dartt no longer suffered from a handicap.[19] He also suffered no injury when the tractor-trailer flipped over at the landfill. Dartt's only claim was that he was terminated immediately after the accident because BFI was concerned that it might again have to pay him workers' compensation.[20] BFI requested an instruction explaining to the jury BFI's obligation to pay workers' compensation benefits to Dartt had he been injured at the landfill. An employer is liable for all accidents "arising out of and in the course of employment." G. L. c. 152, § 26. BFI argued, correctly, that its workers' compensation liability would not and could not turn on whether or not Dartt remained at BFI. See *Zygmuntowicz* v. *American Steel & Wire Co. of N.J.*, 240 Mass. 421 (1922). Dartt responded that the workers' compensation statute exempts an employer from paying benefits to an employee who is injured because of his own "serious and wilful misconduct," G. L. c. 152, § 27, and that BFI could have defended against any claim on that basis.[21] BFI, in turn, informed the judge that it would accept an instruction that informed the jury of both BFI's continuing obligation to provide workers' compensation benefits to Dartt had he been injured, and BFI's opportunity to defend against a claim for benefits on grounds of "wilful misconduct" by Dartt.

The judge refused to give either instruction, concluding that BFI's potential obligation under the workers' compensation statute was "too hypothetical" to present to the jury. Her refusal to do so was error sufficiently prejudicial, we conclude, to require a new trial. Dartt himself testified that he was terminated because BFI hoped to avoid paying him any potential workers' compensation liability.[22] BFI's continuing legal obligation to pay any workers' compensation claim by Dartt was therefore directly relevant to the

---

[19]There was evidence that when he first returned to work, Dartt told Stone that his back was still bothering him. Thereafter Dartt underwent further physical therapy, at the conclusion of which he never again complained about his back. There was no evidence that, at the time of the second accident, Dartt suffered from any back problems.

[20]Dartt argues in the alternative that BFI's discriminatory motive was to avoid paying future workers' compensation claims because BFI viewed him as "damaged goods." There was no evidence to support this theory.

[21]The argument lacks merit because there was no evidence that Dartt had engaged in any wilful misconduct.

[22]When asked on direct examination "why" he was terminated, Dartt said, "I feel the company was afraid that I was going to go back out on workmen's comp., claiming an injury from the accident."

jury's consideration of Dartt's accusation. The jury also heard and may well have been confused by counsels' closing arguments in which both described to the jury, without objection, their respective interpretations of BFI's legal obligations under the workers' compensation statute. It is the responsibility of the judge, not counsel, to state to the jury the "governing principles of law as to the issues raised by the pleadings and supported by [the] evidence, so that the jury may clearly understand their duty and be enabled to perform it intelligently." *Maxwell* v. *Massachusetts Title Ins. Co.*, 206 Mass. 197, 200 (1910).

The judge also allowed in evidence information concerning BFI's attempt to contain workers' compensation claims and other safety and cost control efforts. See notes 5 and 6, *supra*. Having done so, the judge should not have left the jury uninformed about BFI's obligations to Dartt under the workers' compensation statute. In *Tuttle* v. *McGeeney*, 344 Mass. 200, 208 (1962), we held that when erroneous instructions "tended to confuse and mislead the jury," substantial justice required a new trial. See *Squeri* v. *McCarrick*, 32 Mass. App. Ct. 203 (1992) (when effect of instructions is substantially to confuse jury, new trial required). Ignorant about BFI's legal obligation to Dartt, the jury could well have concluded that by terminating him, BFI could have avoided any further workers' compensation liability to him.

We next review whether an application form for new hires previously used by BFI was improperly admitted in evidence. The form contained questions about medical conditions, and claims for work-related injuries, now prohibited by the ADA. There was evidence that BFI ceased using the form some time prior to, and in response to, the enactment of the ADA. BFI filed a motion in limine to exclude the form because, it claimed, it had discontinued its use, the form was irrelevant to the issues in the case,[23] and was prejudicial to BFI. The judge allowed Dartt to admit the form for the purpose of demonstrating BFI's "state of mind." That ruling was erroneous. Dartt argues that the form demonstrated that BFI "considered back injuries and workers' compensation claims in the hiring stage," and therefore "considered the same factors" in the decision to terminate Dartt. We disagree. Dartt was not suffering from a back injury, or

[23]Dartt never completed the form, and there was no evidence that the form played any role in any employment decision by BFI.

other medical condition, when he was terminated. See notes 19 and 20 and accompanying text, *supra.* He cannot claim that BFI terminated him because of an injury, and his argument concerning BFI's preemployment inquiries about back injuries fails. Dartt said that he was fired because BFI was concerned he might file a claim for workers' compensation. See note 22, *supra.* Construing Dartt's argument with respect to that claim in the manner most favorable to him, he says that the BFI form violated Massachusetts law,[24] as evidenced by "guidelines" adopted by the Massachusetts Commission Against Discrimination (MCAD) on September 30, 1986. (Unlike the statute, the "guidelines" prohibit specifically preemployment inquiries about receipt of workers' compensation. See 8 Mass. Discrimination Law Rep. 2003, 2012 § IV[B] [1986]). Assuming that the use of a hiring form is probative of a reason to terminate, of which we are dubious, see, e.g., *Robbins* v. *Camden City Bd. of Educ.,* 105 F.R.D. 49, 60 (D.N.J. 1985) (discovery of hiring practices precluded in wrongful denial of tenure action); *McClain* v. *Mack Trucks, Inc.,* 85 F.R.D. 53, 62 (E.D. Pa. 1979) (litigation history in hiring, promotion, and classification not relevant discovery in illegal discharge action), Dartt's reliance on MCAD guidelines[25] that prohibit preemployment inquiries concerning workers' compensation is simply too tenuous to warrant the admission of the form as probative of BFI's state of mind in this wrongful termination case.[26] We find equally troublesome the wholly unwarranted contention by Dartt's counsel during his

---

[24]General Laws c. 151B, § 4 (16), provides in revelant part that "[a]n employer may not make preemployment inquiry of an applicant as to whether the applicant is a handicapped individual or as to the nature or severity of the handicap . . . ."

[25]The "guidelines" are not enforceable regulations. See *Gray* v. *Commissioner of Revenue,* 422 Mass. 666, 677 (1996) (Lynch, J., dissenting) ("While parties and judges may be presumed to know what statutes apply to a given court order, the same cannot be said of administrative interpretations of those statutes. Such interpretations, whether in the form of regulations, directives, or guidelines, lack the legal force of statutes").

[26]Relying on *Cook* v. *State Dep't of Mental Health, Retardation, & Hosps.,* 10 F.3d 17 (1st Cir. 1993), Dartt argues that an employer's expressed concerns about claims for workers' compensation are a form of prohibited employment discrimination. Dartt's argument sweeps too broadly. In *Cook,* the employer's physician had recommended that an applicant with morbid obesity not be hired because he believed her obesity placed her at risk and he was concerned about the over-all costs of workers' compensation injuries. *Id.* at 28 n.13. In this case, there was no evidence of any such individualized concern.

closing argument that BFI had violated the ADA.[27] Counsel for BFI objected to the statement but the judge overruled the objection. That was error. There was no such evidence[28] and that assertion should never have been made.

## IV

We consider BFI's claim that the judge erred in denying its motion for a directed verdict and for judgment notwithstanding the verdict because, BFI claims, there was insufficient evidence as a matter of law supporting the verdict. "We start with the proposition that taking the question out of the jury's hands is disfavored in the context of discrimination cases based on disparate treatment because the ultimate issue is often that of intent, and is a factual question." *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 820 (1997), citing *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 439-440 (1997). "[W]e view the evidence in the light most favorable to the plaintiff and disregard evidence favorable to the [employer]." *Labonte, supra* at 820-821, citing *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 326 (1982). We sustain a jury verdict if a jury could reasonably have arrived at their verdict from any of the evidence that the plaintiff presented. *Labonte, supra* at 821.

BFI argues, first, that there was insufficient evidence to support a finding that Dartt was "handicapped" at the time of his termination for the purposes of establishing liability under G. L. c. 151B.[29] Under G. L. c. 151B, § 1 (17), the term "handicap" means (a) a physical or mental impairment that substantially limits one or more major life activities of a person; (b) a record of having such

---

[27]During his closing argument, Dartt's counsel said, "And you heard the testimony that . . . they had to change the application in '92 because of the federal law, the Americans for Disability law [*sic*]; and that's why they had to change this. It was in violation of that law."

[28]On appeal Dartt claims that BFI continued to use the application form after the ADA took effect. In violation of rule 16 (a) (4) of the Massachusetts Rules of Appellate Procedure, Dartt provides no reference for such a claim, and we find nothing in the record to support it.

[29]BFI concedes that it did not raise this issue in its motion for a directed verdict or in its motion for judgment notwithstanding the verdict. Its failure to do so is explained, partly, because it relies on *Hallgren* v. *Integrated Fin. Corp.*, 42 Mass. App. Ct. 686, 688-689 (1997), an opinion not issued at the time of trial. We exercise our discretion to consider this issue. See *Pryor* v. *Holiday Inns, Inc.*, 401 Mass. 506, 509 (1988).

impairment; or (c) "being regarded as having such impairment." BFI urges us to hold that a temporary disability does not constitute a handicap within the meaning of the statute. We decline to do so. Not every temporary disability is short lived. Dartt, for example, was unable to work for over two years while he was undergoing two operations for work-related injuries, the costs of which BFI paid. Cf. *Hallgren* v. *Integrated Fin. Corp.*, 42 Mass. App. Ct. 686, 688-689 (1997) (plaintiff, who had recovered from knee injury within month and had no residual disability, neither had "record" of disability nor was "regarded" as having disability). While we agree that the evidence was slight, we cannot say as a matter of law that there was insufficient evidence for the jury to conclude that, at the least, Dartt was "regarded by [BFI] as having an impairment."[30]

Second, BFI argues that there was insufficient evidence to support a finding that Dartt was terminated because of a handicap. While we have held that the evidence concerning BFI's efforts to contain its workers' compensation claims was improperly admitted, on balance we conclude that evidence that BFI may have deviated from its normal management procedures when it summarily terminated Dartt could support a reasonable inference that BFI had terminated Dartt because of his perceived handicap. Upon remand, the judge should be careful to exclude all evidence about BFI's management of its workers' compensation claims and its safety maintenance program. Such evidence is not probative of discriminatory motive and is prejudicial to BFI.

## V

Finally, BFI argues there was insufficient evidence as a matter of law to support the award of punitive damages. In *Bain* v. *Springfield*, 424 Mass. 758, 767 (1997), we said that punitive damages are appropriate "where a defendant's conduct warrants condemnation and deterrence." Although G. L. c. 151B does not

---

[30]The workers' compensation act, G. L. c. 152, § 75B (1), provides that any employee "who has sustained a work-related injury and is capable of performing the essential functions of a particular job . . . shall be deemed to be a qualified handicapped person under the provisions of chapter one hundred and fifty-one B." In *Hallgren* no claim was made regarding the applicability of G. L. c. 152, § 75B. *Hallgren, supra* at 686 n.2. We do not consider the applicability, if any, of that statute to Dartt's claim.

provide any limit for punitive damages, the award of such damages is governed by common law and constitutional principles. *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 826 (1997). The Restatement (Second) of Torts § 908(2) (1979) provides that "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." The judge gave the jury instructions consistent with the common law principles governing punitive damages.

While we do not substitute our judgment for that of the jury, there was no admissible evidence that BFI's conduct — measured under G. L. c. 151B — was outrageous in any respect. It is possible that the jury awarded punitive damages because they concluded that BFI had knowingly violated the ADA and had deliberately sought to avoid its legal obligations to Dartt under the workers' compensation statute. The evidence to support those claims was improperly admitted. Absent such evidence, the question of punitive damages should not have been sent to the jury. See *Karcher* v. *Emerson Elec. Co.*, 94 F.3d 502, 509 (8th Cir. 1996), cert. denied, 117 S. Ct. 1692, 1693 (1997) (punitive damages claim should not have been submitted to jury in sex discrimination case because evidence did not support finding that employer's conduct was outrageous, as required under State law claim, or that employer acted with malice or reckless indifference, as required under Title VII); *Braverman* v. *Penobscot Shoe Co.*, 859 F. Supp. 596 (D. Me. 1994) (although plaintiff had established case of prima facie discrimination under ADA and evidence of pretext sufficient to defeat employer's motion for summary judgment, plaintiff had not raised sufficient evidence that employer had discriminated against him with "malice" or "reckless indifference" to allow claim of punitive damages to go to jury). On remand, the issue of punitive damages should not be sent to the jury.

The case is remanded to the Superior Court for a new trial.

*So ordered.*