Moses, Richard T., J.
This action was filed by the plaintiff, Janice Flanders (“Flanders”) against the defendants, Levy Home Entertainment, Inc. and Chas. Levy Circulating, Co., hereinafter collectively referred to as “Levy.” The complaint alleges that Flanders was discharged from her employment with Levy on account of her age in violation of G.L.c. 151B, §4(1B) and on account of a disability in violation of G.L.c. 151B, §4(16). Count III asserts a claim for wrongful termination and Count IV asserts a claim for intentional/negligent infliction of emotional distress. At hearing, counsel for the plaintiff conceded that Counts III and IV do not lie in that the wrongful termination claim is unsupported by evidence of a violation of a clearly established public policy. (See King v. Driscoll, 418 Mass. 576, 581-82 (1984).) Furthermore, the Workers’ Compensation Act bars the claim for intentional or negligent infliction of emotional distress. Doe v. Purity Supreme, Inc., 432 Mass. 563 (1996). The motion was argued before this court on March 28, 2006 and taken under advisement.

STATEMENT OF RELEVANT FACTS

Flanders began her employment at Levy in August of 1995 as a field representative. Her duties involved *345 maintaining book displays in customer stores which involved her making regular visits to such stores once or twice a week. Her employment was classified as part-time and involved approximately fifteen (15) hours of work per week. The physical requirements of her job required that Flanders drive to her assigned store locations and while there she was required to lift and carry some books which could be in packages of up to fifty (50) pounds. This lifting requirement could be accommodated by Flanders opening such packages and carrying smaller quantities of books. It is undisputed that Flanders was terminated by Levy on or about July 6, 2001 when she was sixiy-one (61) years of age. It is also undisputed that prior to her discharge her performance had been satisfactory to Levy.
On or about April 13, 2001, Flanders, while traveling in an automobile with her husband, was involved in an accident in which she suffered hip and lower back injuries. She was taken by ambulance to St. Luke’s Hospital in New Bedford and discharged the same day. Her husband also sustained injuries in the accident which were somewhat more disabling than the injuries suffered by Flanders. Flanders began a course of treatment under the direction of her primary care physician, Dr. Robert Greene, and also received physical therapy and chiropractic treatment between May 2001 and July 2001. A lumbar MRI, performed on June 2, 2001, demonstrated degenerative disc changes and mild spinal stenosis at L3-4. A nerve conduction study conducted at Parkside Orthopedic Rehabilitation on or about May 24, 2001 indicated an abnormal study with electrophysiologic evidence of mild L4, L5 radiculopathy on the left side. From the inception of Flanders’ injuries she provided a series of notes from Dr. Greene which continued to extend the anticipated duration of her work absence. The last note received from Dr. Greene was dated June 28, 2001 and provides “(a]bove patient may return to work as of 7/9/01 - at one store only for first week - then unlimited.” The summary judgment record is somewhat conflicting as to the extent of Dr. Greene’s cooperation in responding to inquiries from Levy as to the state of Flanders’ medical condition. Taking the summary judgment record in the light most favorable to the plaintiff, a jury could find that Dr. Greene’s office was cooperative in the completion of any disability forms received from Levy and did not ignore any other inquiries about Flanders’ condition.
During the term of Flanders’ absence from work, her condition was monitored by Jan Putbress (“Putbress”), a registered nurse who was a disability consultant for Levy, and had also followed Flanders in connection with two past workers’ compensation claims arising out of a left knee injury which required surgery in 1997. It is apparent that Flanders’ prior knee injuries were a matter of concern to Levy as evidenced by certain memos which are part of the summary judgment record. As early as May 1, 2001, Beth Lehnhardt (“Lehnhardt”), who is employed by the Human Resources Department of Levy, e-mailed Putbress. Her message included:
Janice has had workers’ comp claims regarding her left knee and her knee was operated on in 97 or so. She fell in a store in 99 and re-injured the same knee. I have no idea what her injuries are so I really want to make sure she is ok before she returns to work.
An e-mail from Justine Willis of Levy to Lehnhardt states in part, “I want to apprize you of a situation occurring with Janice Flanders. Since she was out on medical leave last year, I want to make sure everything is well documented.”
On May 22, 2001, Lehnhardt e-mailed Putbress: “Just sent you a copy of her Dr. note. She included a note with the Dr. note that her next appointment is 5/23 and she hopes to return to work then. I want to make sure she is ready to return to work because of the previous workers’ comp claims for her knee.”
As previously indicated, Dr. Greene prepared a note on June 28, 2001 indicating that Flanders was able to return to work as of July 9, 2001 at one store for one week and then unlimited. Lehnhardt prepared several memos on July 6, 2001, the first of which referenced the fact that Flanders had received several doctor’s notes indicating that she was ready to return to work in a week or two and then such period was thereafter extended. The note further expressed that Putbress had discussed with Flanders that she might be able to return working at one store only and then return to full duty at a later date and that such arrangement was unacceptable. Such note further states:
Janice has had previous workers’ comp claims involving a knee. It was thought to be too risky to return her to light duty and the field was notified that we recommended that she be released and she could reapply for employment when fully recovered.
This recommendation resulted in Flanders’ termination by her supervisor, Cis Felici (“Felici”), on or about July 6, 2001. Flanders telephoned Lehnhardt apparently due to Felici advising Flanders that her termination was due to a recommendation of Lehnhardt. In a memo prepared by Lehnhardt, she reflected that she had told Flanders that human resources only makes recommendations to a supervisor who ultimately makes the final decision. She stated that Flanders advised her that Putbress had recommended a return to one of the stores to start light duty work but that this was not satisfactory and that “we have to look at her case as a workers’ comp issue.”
On July 9, 2001, Felici e-mailed Lehnhardt indicating that she had just received a call at home from Flanders who had claimed she had received a note from her doctor saying that she was able to resume work without restrictions. The e-mail reflects that Felici told Flanders that she had reservations about *346 this because in the prior weeks she had advised her that her calf was still swelling and she had stiffness. This was followed by a letter dated July 9, 2001 from Flanders to Lehnhardt memorializing that she had been advised by Putbress to return part-time beginning July 9, 2001 but Felici informed her that she and Lehnhardt had conversed and believed that she could not return to work until “. . . fully recovered and someone was going to be hired to do my stores ...” The remainder of the letter deals with the fact that Flanders was told that she could re-apply; however, she was not assured that she would not lose her seniority.
The summary judgment record establishes that Levy placed advertisements in the New Bedford Standard Times for what appears to be a replacement for Flanders on July 13, 21 and 25, 2001 resulting in Levy interviewing candidates for Flanders’ position. It is also undisputed that on July 11, 2001, Levy received a facsimile communication from Dr. Greene stating that Flanders was medically cleared to return to work.
This communication did not result in a rehiring of Flanders. As a result of the above-referenced newspaper advertisements and interviews, Levy hired Michelle Kearney (“Kearney”) to replace Flanders. Kearney was fifty (50) years old having been bom on January 21,1951and hence was eleven years younger than Flanders.
On December 26, 2001, Flanders filed a complaint with Massachusetts Commission Against Discrimination (“MCAD”) alleging unlawful discrimination claiming that Flanders was terminated from her employment based upon her age and disability.
On January 24, 2002, a memorandum bearing such date was prepared by Ed Sebring of Levy and notarized by Lehnhardt, the “subject” of such statement was “Position Statement - Janice Flanders (No.: L1-BEM-10998).” Such statement was apparently forwarded to MCAD by letter dated March 4, 2004 with a copy to Flanders. The Position Statement describes Flanders’ duties and states “(b)ased on work requirements (essential functions) field representatives must be able to lift and cany 50 pounds.”[1] The Position Statement further alleges that every effort was made to obtain medical information from Flanders but that Levy was unsuccessful. The statement further provides that after an extended non-documented period, Flanders’job had to be filled in order to meet customer requirements. The statement further asserts “LHE aggressively pursued the situation to justify keeping her job open until her return with little cooperation from Flanders. For business reasons, she was terminated."
This assertion is directly contradicted by affidavit of Margie Carreiro, who is an employee of New Bedford Surgical Associates, Inc. which employed Dr. Greene. Carreiro asserts in her affidavit that all requested information was provided to Ms. Putbress including the completion of a short-term disability application which was filled out and returned to Levy on June 13, 2001. Also the allegation as to little cooperation by Flanders is contradicted by Flanders.
MCAD proceeded to dismiss Flanders’ MCAD complaint for lack of probable cause resulting in the filing of the present action.

STANDARD FOR SUMMARY JUDGMENT

The Supreme Judicial Court has recognized summary judgment as “. . . an excellent device to make possible the promptest disposition of controversies on the merits without a trial, if in essence there is no real issue as to the salient facts if only a question of law is involved.” Community Nat’l Bank v. Dawes, 369 Mass. 550, 552 (1976). See also Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1984). Summary judgment should be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c) and Community Nat’l Bank v. Dawes, supra at 553. The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The burden on the moving party may be satisfied either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the party opposing the motion has no reasonable expectation of proving an essential element of the party’s case. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in such party’s favor. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991).

FLANDERS’ CLAIM OF HANDICAP DISCRIMINATION

Levy claims that a summary judgment record fails to establish that Flanders was handicapped within the meaning of G.L.c. 151B, §4(16).
In order for the plaintiff to establish a prima facie case in the discrimination action under G.L.c. 151B, §4, a three-stage order of proof must be met. In the first stage, the employee has the burden of establishing a prima facie case of discrimination by showing that (1) he is a member of a class protected by G.L.c. 151B; (2) he performs his job at an acceptable level; (3) he was terminated; and his employer sought to fill plaintiffs position by hiring another individual with qualifications similar to the plaintiffs qualifications.
In the second stage, the employer can rebut the presumption by articulating a lawful reason or reasons for its employment decision and producing credible evidence to show that the reason or reasons advanced were the real reasons. The employer is not required to prove that the reasons were non-discriminatoiy although the defendant retains the incentive *347 to persuade the trier-of-fact that the decision was lawful. If the employer fails to meet its burden of production at this stage, a prima facie case is established for the plaintiff. If the employer meets the burden of such lawful basis for termination, the presumption created by the prima facie case drops from the case and advances to the third stage.
At the third stage, the employee must show the basis for the employer’s decision was unlawful discrimination. This may be accomplished by showing that the reasons advanced by the employer for making the adverse decision are untrue.
Evidence that the employer’s reasons are untrue gives rise to inference that the plaintiff was a victim of unlawful discrimination. Such inference together with the elements described in stage one describes a prima facie case sufficient to withstand a directed verdict and are sufficient to sustain a verdict in favor of a plaintiff. Abramian v. President & Fellows of Harvard College, 442 Mass. 107, 116-19 (2000).
Summary judgment is disfavored in the context of a discrimination case since the ultimate issue is often that of intent and is a factual question. Dartt v. Browing-Ferris Industries, Inc., 427 Mass. 1, 16 (1998).
Applying these principles in the context of the handicap discrimination claim, one must consider whether or not Flanders fits within the statutory definition of G.L.c. 151B, §1(17), which defines the term “handicap” as: (a) a physical or mental impairment that substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment. Dartt v. Browning-Ferris Industries, Inc., 427 Mass, at 16-17.
Levy asserts that Flanders cannot meet such definition while Flanders counters that the summary judgment record at the very least establishes that she had a record of disability and was regarded ás having a disability.
In support of its position, Levy relies heavily upon City of New Bedford v. Mass. Comm’n Against Discrimination, 440 Mass. 450 (2003). In City of New Bedford, the city challenged an award made by an arbitrator appointed by MCAD to a police officer who had been denied permission to return to a SWAT team after he had been involved in a shooting resulting in a fatality. The officer’s superiors were concerned about the officer being under stress and assigned him to duty in a police cruiser. In considering the statutory definition of handicapped, the court noted that it must first consider whether the plaintiffs condition, actual or perceived, constitutes a mental or physical impairment and secondly whether the life activity curtailed constitutes a major life activity defined by G.L.c. 151B, § 1 (20). The officer argued in City of New Bedford that he was regarded as having emotional problems and being mentally unstable and further that G.L.c. 151B, § 1 (20) provides that major life activities includes working. The court had to determine whether the officer was perceived as having a mental impairment that substantially limited his major life activity of working. See City of New Bedford v. Mass. Comm’n Against Discrimination, 440 Mass. at 464.
The court concluded that a perception that an employee is unable to perform only a particular aspect of his job (SWAT team membership) is not sufficient to satisfy the “substantial limitation” requirement of the statute. The court found that an employee is regarded as having a substantial limitation on the major life activity of working only if his perceived impairment precludes him from performing a class of jobs. The court noted that the officer returned to his duty as a police officer and there was no evidence to suggest that he could not find such work as a police officer with another department. The court further discounted the officer’s argument that he was regarded as being substantially limited in his ability to think or concentrate or interact with others in light of the fact that his supervisors returned him to active duty, provided him with a lethal weapon, and assigned him to patrol duties which often times require split second reactions. City of New Bedford v. Mass. Comm’n Against Discrimination, 440 Mass, at 467.
Flanders relies heavily upon Dartt v. Browning-Ferris Industries, Inc., supra, which concluded that a prima facie case of unlawful employment discrimination based upon a handicapped was established if the plaintiff established: (1) that she was handicap within the meaning of the statute, qualified to perform the essential functions of her job with or without reasonable accommodation; (2) that she was terminated or otherwise subject to adverse action by her employer; and (3) that the position that she occupied remained open and the employer sought to fill it. The court further noted that it was not necessary that the plaintiff show as part of a prima facie case that she was terminated solely because of a handicap. Dartt v. Browning-Ferris Industries, Inc., 427 Mass. at 3.
A review of the facts in Dartt reveal that Dartt was employed as a truck driver from 1985 until 1992. In 1990, he injured his back when he fell from a trailer during the course of his employment after which he underwent two operations and did not work for almost two (2) years resulting in workers’ compensation benefits being paid by BFI. He returned to work full-time and after approximately two months was involved in a second accident when a vehicle that he was operating flipped over while he was dumping sludge at a landfill. Approximately twelve (12) days after the accident, Dartt was terminated after a review of BFI’s Safety Review Board.
Dartt did not claim that he was injured in the second accident and asserted that he was fired because BFI was concerned that he might file a new workers’ compensation claim. There was evidence that *348 at the time of such termination, BFI was concerned about rising costs of workers’ comp claims within the company. BFI argued that Dartt had failed to establish a prima facie case before the jury and that a directed verdict should properly have been granted because of the failure of Dartt to establish that he was handicapped within the meaning of the statute. BFI further argued that a temporary disability does not constitute a handicap within the meaning of the statute. The court found that “not every temporary disability is short lived. Dartt for example, was unable to work for over two (2) years while he was undergoing two (2) operations for work related injuries, the cost of which BFI paid.” The court further noted that while the evidence was slight, it could not say as a matter of law that there was insufficient evidence for the jury to conclude that at least Dartt was “regarded by BFI as having an impairment.” Dartt v. Browning-Ferris Industries, Inc., 427 Mass. at 17. The court further held that there was sufficient evidence to support an inference that BFI terminated Dartt because of his perceived handicap by virtue of its failure to follow normal management procedures when it terminated him.
The court made reference to the fact that the Workers’ Compensation Act, G.L.c. 152, §75B(1), provides that an employee who has sustained a work-related injury and is capable of performing the essential functions of the particular job shall be deemed to be a qualified person under the provisions of Chapter 151B. Dartt v. Browning-Ferris Industries, Inc., 427 Mass. at 17, n.30.
The facts in the present action are more similar to the facts in Dartt than those in City of New Bedford. In City of New Bedford, the officer was permitted to return to the police force as a uniformed patrol officer with authority to carry a firearm and perform other duties of an officer and thus could not be perceived as having a major life activity being curtailed. In Dartt, as in the case at bar, the employee was allegedly fired based upon the perception of a disability which would preclude him from pursuing his occupation as a truck driver. Flanders’ supervisor, Felici, testified that the lifting requirement of Flanders’ job could be accommodated by virtue of the fact that such requirement was only occasional and the contents of the box could be removed in portions under five (5) pounds. Also, Levy’s perception of Flanders must be considered in light of the memoranda referenced in this decision relating to prior workers’ compensation claims which included surgery on her left knee. It could be argued such condition was considered by Levy, together with Flanders’ back and hip injury, as rising to the level of a handicap.
Furthermore, it could certainly be argued that the circumstances surrounding the explanation of Levy are suspect as to its basis for termination. The record establishes that at least by July 2, 2001, Levy was in possession of a note which at the very least conditionally permitted the return of Flanders to her former position with a reasonable accommodation of starting at one store for one week and returning to full-time after two weeks. Levy did not advertise for a replacement for Flanders until after the aforementioned return to work date and did not offer Flanders an opportunity to attempt to return to work with or without accommodations.
For the above reasons, the Motion for Summary Judgment as to Flanders’ claim of discrimination based upon disability must be denied.

FLANDERS’CLAIM OF DISCRIMINATION BASED UPON AGE

For the plaintiff to prevail in a claim of age discrimination, she must demonstrate that she (1) was a member of the class protected by G.L.c. 151B; that is she was over the age of forty (40) years; (2) that she performed her job at an acceptable level; (3) that she was terminated; and (4) that she was replaced by a similarly less qualified or younger person. Knight v. Avon Products, Inc., 438 Mass. 413, 420-21 (2003), and cases cited. The court in Knight noted that age unlike gender or race is a relative term and the greater the difference in age, the stronger the possible inference of discrimination. Further the court noted that the discrimination statute should be construed liberally for the accomplishment of its remedial purposes. Knight v. Avon Products, Inc., 438 Mass, at 423, citing Dahill v. Police Department of Boston, 434 Mass. 233, 240 (2001). The court decided that an age disparity of less than five (5) years by itself is too insignificant to support a prima facie case of age discrimination.
In the case at bar where Flanders was replaced by a person eleven (11) years younger, such disparity by itself is sufficient to support a prima facie case of discrimination. Taking the evidence in the light most favorable to the plaintiff, the evidence is sufficient to establish that the reasons proffered by Levy for termination were false, from which a juiy could infer that Flanders was terminated either because of a perceived handicap or that she was terminated because of her age or both. Lipchitz v. Raytheon Company, 434 Mass. 493, 499 (2001).
At the very least, a juiy could determine that one of the reasons for terminating Flanders was her age and thus summaiy judgment must be denied as to Count II.

ORDER

For the foregoing reasons, it is ORDERED that the defendants’ Motion for Summaiy Judgment as to Counts I and II is DENIED. The defendants’ Motion for Summaiy Judgment as to Counts III and IV is ALLOWED.

The summary judgment record contradicts the assertion that Levy had a strict rule requiring that an employee be able to lift fifty (50) pounds. Felici testified at deposition that the fifty (50) pound lifting requirement was occasional and could be avoided by removing the contents of a box which had to be moved.