Gants, J.
On October 6, 1995, the plaintiff, E. Bernard Plante (“Plante”), filed the present amended complaint seeking to recover damages resulting from his termination by his employer, the defendant, Shawmut Bank, N.A. (“Shawmut”). The plaintiff contends that the defendant discharged him because of his age and physical handicap, in violation of G.L.c. 15 IB. The defendant now moves for summary judgment. After a hearing and for the reasons stated below, the defendant’s motion for summary judgment on the age discrimination claim is ALLOWED, but the defendant’s motion for summary judgment on the handicap discrimination claim is DENIED.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts stated below are presented in the light most favorable to the plaintiff and should not be misunderstood as findings of the Court.
Plante had been employed by the Worcester County Savings Bank as a commercial lender. In 1989, Shawmut acquired that savings bank, and Plante became a Shawmut employee. He continued to be engaged in commercial lending to small businesses, and his immediate supervisor continued to be Leo Boliver. Early in 1990, Plante was diagnosed with malignant lymphoma involving the skin of his forehead and received a course of radiation which ended, successfully, in the summer of 1990. Since then, he has had no recurrence of the lymphoma and has received no active treatment for the condition, but he continues to suffer from fatigue and malaise related to the cancer.
Based on Shawmut’s formal performance evaluations, Plante’s job performance suffered as a result of the lymphoma. His annual performance rating for 1989, before the onset of the lymphoma, was 3.4, but it fell to 2.9 for 1990 and then fell again to 2.0 for 1991, where it remained for both 1992 and 1993. His superiors acknowledged Plante’s health problems in his performance appraisals. In his performance appraisal for 1990, his supervisor commented that his job performance “was impacted by some health related problems.” Similar comments were made in the appraisals for 1991 and 1992. In his final performance appraisal, for the period from April 1993 through December 1993, his supervisor stated, “Business development effort hindered by illness in early stages of organization,” but noted his steady improvement. There is no dispute that, while 2.0 is a relatively low performance rating, it reflects a satisfactory performance of his job duties.
In late 1992 and continuing into early 1993, Shawmut restructured certain functions within the commercial lending area and created a Small Banking Division. The Bank took its commercial loans of $250,000 or less, identified those as “small business accounts,” and made them the responsibility of Business Bankers, whose job was to service these smaller commercial accounts. Shawmut allocated these small business accounts among Business Bankers, including Plante, in three regions — north, south, and west — -with three of the Business Bankers, not including Plante, serving as Regional Sales Managers. In his new capacity under this restructuring, Plante reported to Geoffrey Underwood, a regional supervisor, who in turn reported to John Weeks, III, who reported to John Hall, II.
This restructuring was quite short-lived. As a result of a management consultant study conducted for Shawmut by McKinsey & Company, which identified a need to refine the Bank’s focus on the small business market, Shawmut decided to restructure again in late *644 1993 and early 1994. This time, Shawmut decided to eliminate the three small business regions in Massachusetts, and create a single statewide territory. The elimination of the regions permitted the elimination of the Regional Sales Manager positions, and a reduction in the number of Business Bankers to 11. All the Regional Sales Managers were given the option of being considered for the 11 positions as Business Bankers, but only Underwood accepted this offer, leaving 13 Shawmut employees — 12 Business Bankers (including Plante) and Underwood — to contest for the 11 jobs as Business Bankers.
Shawmut decided that this winnowing process would be determined by a mathematical formula which assigned 80% weight to the performance rating for 1993 and 20% to seniority at Shawmut. Applying that formula, Plante received among the two lowest scores. On March 29, 1994, he was informed that he would be terminated from Shawmut effective October 28, 1994, and should not report to work on a regular basis after May 2, 1994. Subsequently, Weeks asked Plante if he would be interested in becoming a Business Banker working out of New Bedford, but Plante replied that he had no interest in such a move.
At the time of his termination, Plante was 49 years old. Had he remained at Shawmut, he would have been eligible for retirement at 55, and he contends that he would have taken this early retirement. Numerous Business Bankers older than Plante were retained under the formula. Indeed, as a result of the reduction in force, the average age of the Business Bankers slightly increased, primarily because the other terminated Business Banker, Debra Phillips, at 39, was one of the youngest Business Bankers.
After Plante received notice of his termination, he trained Richard Thomas, 44, to take over his duties and responsibilities. Thomas remained with Shawmut for only two months, and his duties were then assumed by William Carbone, who was one year younger than Plante but earned $18,000 per year less than Plante.
DISCUSSION
To prevail on summary judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment on that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highlands Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). Where, as here, the party opposing summary judgment has the burden of proof at trial, the moving party is entitled to summary judgment if it “demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). ‘To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Id. It is sufficient to demonstrate that “proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
A. Age Discrimination Under Chapter 15IB
Under G.L.c. 151B, §4(1B), it is an unlawful practice for any private employer, “because of the age of any individual... to discharge from employment such individual. . . unless based upon a bona fide occupational qualification.” As a result of the definition of “age,” the protection against age discrimination applies only to individuals over 40 years of age. G.L.c. 151B, §1(8).
In evaluating age discrimination claims under Chapter 15IB, Massachusetts courts use the same three-stage analysis originally devised by the United States Supreme Court to address Title VII discrimination claims. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 440 (1995). In the first stage, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Id. at 441. Once the prima facie case is established, the plaintiff enjoys a presumption of discrimination that entitles the plaintiff to judgment unless and until the defendant rebuts the presumption “by articulating a legitimate, non-discriminatory reason for its hiring decision.” Id. Once the defendant satisfies this burden of production, the presumption vanishes, and the plaintiff bears the burden of persuasion at the crucial third stage to establish either that the employer’s articulated reason was a pretext or that the actual reason for the hiring decision was discrimination. Id. at 444.[1]
In traditional employment discrimination cases where the plaintiff has been terminated, the first stage showing of prima facie discrimination is satisfied by proving four elements:
1. The plaintiff belongs to a protected class, which in age discrimination cases means that he is over 40 years of age;
2. he performed his job acceptably;
3. he was terminated; and
4. “his employer sought to fill the plaintiffs position by hiring another individual with qualifications similar to the plaintiffs.”
Blare at 441.
While I can find no Supreme Judicial Court case that addresses the issue, the Appeals Court has clarified this fourth element in age discrimination cases to require that this similarly qualified replacement be younger than the plaintiff. Powers v. H.B. Smith Co., Inc., 42 Mass. App. 657, 661 (1997); Tardanico v. Aetna Life & Casualty Company, 41 Mass. App. 443, 447 n.4 (1996). There are sound reasons to require such proof as part of a prima facie case of age discrimination. The law gives great consequence to proof of a *645 prima facie case; once proven, it requires a judgment in favor of the plaintiff unless rebutted. As a result, logically, it must by itself reasonably permit an inference of discrimination. O’Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 312 (1996). Indeed, the elements of the prima facie case should eliminate the most common nondiscriminatory reasons for the plaintiffs termination. Blare, 419 Mass. at 441. The mere termination of an employee over 40 who was performing adequately does not, by itself, permit any inference of age discrimination if this employee is replaced by someone his own age or older. O’Connor, 517 U.S. at 312. Age may reasonably be inferred to be a factor in the dismissal only if someone younger is hired in his place. Id. The United States Supreme Court in cases brought under the Age Discrimination in Employment Act of 1967 (“ADEA”) requires as part of the prima facie case proof that the plaintiff was replaced by another worker who was “substantially younger.” O’Connor, 517 U.S. at 312. Even if Massachusetts law were not to go this far with respect to age discrimination cases brought under Chapter 151B, I am convinced that, at a minimum, a prima facie case under Chapter 151B requires proof that the replacement was younger to some degree.
In reduction in force cases like this one, the elements of the prima facie case must be somewhat modified from the traditional termination case, since the plaintiff is not replaced with another employee. Blare, 419 Mass. at 441, citing Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130, 135 n.5 (1976) (“the elements of the plaintiffs initial burden may vary depending on the specific facts of a case”). I reject the plaintiffs suggestion that the modification should simply be the elimination of the fourth element, with satisfaction of the first three elements sufficient to establish a prima facie case. This proposed modification would result in a prima facie case of discrimination being established whenever anyone over 40 who is performing his job acceptably is laid off as part of a reduction in force. The Supreme Judicial Court has specifically rejected this suggestion in gender discrimination cases, declaring:
We would not find support for a prima facie case resting solely on the fact that the college declined to rehire a woman who was qualified academically to hold a teaching position where that teaching position was abolished.
Wheelock College, 371 Mass. at 135-36 n.6. This suggestion must also be rejected in age discrimination cases, because Massachusetts courts apply the same three-stage analysis for age discrimination as for gender discrimination. Johansen v. NCR Comten, Inc., 30 Mass.App.Ct. 294, 297 n.4 (1991). Even more importantly, a prima facie case based on just the first three elements does not permit a reasonable inference of age discrimination and, consequently, logically cannot support the presumption that the law would give it. See Blare, 419 Mass. at 441; O’Connor, 517 U.S. at 312.
I find that the modification of the prima facie case for reduction in force situations involves a new fourth element — proof that the employer did not treat age neutrally in the reduction in force or that the reduction in force had a disparate impact on employees over 40. See Hidalgo v. Overseas Condado Insurance Agencies, Inc., 120 F.3d 328, 333 (1st Cir. 1997) (applying similar fourth element to prima facie case in ADEA reduction in force cases); Crossman v. S. Bent Brothers, Inc., 13 MDLR 2047, 2057 (MCAD 1991) (MCAD applies similar fourth element to prima facie case in Chapter 15IB age discrimination case), affirmed sub nom., S. Bent & Brothers, Inc. v. Havener, 1994 WL 879972 (Mass. Super. Ct. 1994). This requirement is hardly onerous; at most, it requires the plaintiff to present at least some of the evidence at the first stage of the discrimination analysis that he inevitably would need to present at the third stage if he were to have any hope of prevailing.
The plaintiff, even with a generous view of the evidence, cannot satisfy this fourth element of the prima facie case. The plaintiff does not contend that Shawmut reduced the number of Business Bankers in order to dismiss or demote older employees; there is no dispute that it was simply a business decision triggered by the advice it received from its management consultant. Nor is there any dispute that the determination of who would lose their job was based solely on a mathematical formula giving 80 percent weight to the 1993 performance rating and 20 percent weight to seniority. It is noteworthy that Shawmut was under no obligation to weigh seniority at all, but chose to give it significant weight. While 20 percent may not appear at first glance to be significant, it must be recognized that, as a result of the 80/20 formula, if two employees had the same performance rating, the employee with greater seniority would receive the higher overall score. To the extent that seniority is correlated with age, this means that Shawmut affirmatively favored older employees in its reduction in force. Since Plante had more seniority than all but five of the 13 Business Bankers whose jobs were at risk, he would have survived this reduction in force competition if his performance rating was equal to or greater than just two of his seven less senior colleagues.
Nor is there any evidence that the reduction in force had a disparate impact on older employees. The reduction in force resulted in 13 Business Bankers being winnowed to 11. Of the 13, three were older than Plante and another was the same age; all of them survived the cut.[2] Debra Phillips, the other employee terminated, was only 39 years old; only four of the 13 were younger than her. No statistical analysis permits the inference that the reduction in force was targeted to terminate older employees. Indeed, after the reduc *646 tion in force, the average age of the Business Bankers slightly increased from 44.9 years to 45.1 years.
Nor can Plante satisfy the prima facie case by maintaining that, following his termination, his duties were taken over by younger employees, first by Thomas, five years younger, and then, following Thomas’s departure from Shawmut two months later, by Carbone, who was a year younger. Plante does not dispute that Shawmut performed a true reduction in force of its Business Bankers; it was not a sham intended to dismiss employees who would then be replaced without any overall reduction in its workforce. Since the purpose of a reduction in force for a business is generally either to eliminate business functions or to perform the same or similar functions with fewer employees (in other words, at lower cost), a departing employee’s duties are commonly assumed (to the extent they remain) by someone else when there is a reduction in force. When it is undisputed that the employer’s purpose was to eliminate jobs rather than simply to replace a present employee, a prima facie case of age discrimination may not be established simply by showing that the surviving duties of the eliminated positions are being performed by younger employees, because this does not reasonably permit an inference of discrimination. See O’Connor v. Consolidated Coin Caterers Corporation, 517 U.S. at 312. Indeed, to do so would ignore the distinction between a traditional termination and a reduction in force, and the related distinction between replacing an employee in his position versus abolishing a position and transferring those duties to other employees.
However, even if this Court were to find that Plante had presented evidence sufficient to make out a prima facie case of age discrimination, he would still not survive summary judgment. There is no doubt that Shawmut has articulated a legitimate, nondiscriminatory reason for terminating Plante: its management decision to restructure its delivery of loan services to smaller businesses, resulting in its decision to reduce by two its number of Business Bankers, with those two selected via a mathematical formula based in large part on each Business Banker’s 1993 performance rating, with Plante receiving the second lowest score based on this formula. Having satisfied its burden of production, the presumption that would be created if the prima facie case were met would vanish, and Plante would bear the burden of persuading a reasonable trier of fact that this articulated reason was a pretext or that the actual reason for his termination was discrimination. Blare, 419 Mass. at 444. Plante focuses on two pieces of evidence in an effort to demonstrate an inference of pretext or age discrimination sufficient to defeat summary judgment.
First, he declared under oath that his supervisor, Geoffrey Underwood, told him a number of times that he was “probably going to get it” because of his age and salary. Plante admitted that Underwood was expressing his belief rather than speaking from personal knowledge. Underwood denies having made any such statement. At a threshold level, regardless of whether such statements are probative of the intent of Shawmut, they can defeat summary judgment only if they would be admissible testimony at trial, which they are not. Madsen v. Erwin, 395 Mass. 715, 721 (1985) (evidence of material dispute of fact must be admissible at trial).
It is undisputed that Underwood was not involved in Shawmut’s decision to implement a reduction in force, in calculating the formula to determine who would be terminated, or in making the decision to terminate Plante. Indeed, Underwood himself was among the Business Bankers whose jobs were at stake. While Underwood was involved in giving Plante his performance rating in 1993, Plante acknowledges that Underwood, in making these statements, was not describing his own personal conduct towards Plante or seeking to justify his own conduct towards him. Consequently, Underwood’s statements cannot reasonably be understood as a description of the decision-making process he participated in or as an explanation of his own conduct; they reflected simply his personal prediction as to how others at Shawmut were likely to act. One supervisor’s personal opinion as to how his superiors in the corporation are likely to act towards another employee hardly constitutes admissible evidence. See, e.g., Kelleher v. Loral Infrared and Imaging Systems, Inc., 95 F.3d 1146 (1st Cir. 1996) (per curiam) (proof of “bantering,” even by supervisors, “does not suffice to establish a genuine issue of fact as to the employer’s actual mindset”); Sereni v. Star Sportswear Manufacturing Corp., 24 Mass.App.Ct. 428, 433 (1987) (“Expressions of belief, of course, do not rise to the personal knowledge required by Mass.R.Civ.P. 56(e) . . .”); Edouard v. The May Department Store Co., CA No. 95-11380-MLW at *13-14 (D. Mass. Nov. 1, 1996) (Collings, U.S.M.J.) (remarks by supervisor are insufficient to defeat summary judgment if unrelated to the decisional process).
Nor are these statements admissible as the vicarious admissions of a party-opponent — Shawmut. Under Massachusetts law, a statement by an employee is admissible against his employer, even if not made with firsthand knowledge, if the statement concerns a matter within the scope of his employment and is made during the existence of the employment relationship. Ruszcyk v. Secretary of Public Safety, 401 Mass. 418 (1988). Underwood’s alleged statements were plainly not made within the scope of his employment; they did not concern employment matters for which he was responsible but were simply his personal belief as to how others in the corporation would act.
Second, Plante presents the affidavit of his former colleague, Richard Thomas, who attests that he was present at a meeting in February 1994 between Underwood and Underwood’s supervisor, John Weeks, in *647 which Underwood told Weeks that he would rate Plante a “3" on his 1993 evaluation and Weeks responded, ”1 told you he was a ‘2’, and leave him there." Based on this testimony, he contends that his performance rating was lowered after it became known that this rating would be determinative of whether he would make the Business Banker cut, and that the reason for his lowered rating was his age and salary. Even though both Underwood and Weeks deny that any such conversation took place, Thomas’s testimony regarding this conversation would likely be admissible at trial; it would be offered for the fact that it was said, not for the truth of the matter asserted, and therefore would not constitute hearsay. See generally Liacos, Brodin, and Avery, Handbook of Massachusetts Evidence at §8.2 et seq. (6th ed. 1994). Assuming that Weeks indeed did order Underwood to lower Plante’s performance rating, this still fails to raise a material issue of fact as to whether Shawmut’s articulated reason for Plante’s termination was a pretext or that the actual reason for his termination was discrimination. In short, there is no evidence that Plante’s age played any role in the rating he received in 1993. Plante has presented no evidence that his age was ever discussed with him, or that his age was ever discussed by those who participated in rating him, or that his age was considered by those who rated him. Nor is there any evidence that the reduction in force plan resulted in a younger workforce, or unfairly treated older employees. Indeed, the only evidence that age played any role in the reduction in force plan negates any inference of age discrimination; under the overall formula used to determine which Business Bankers would be terminated, Shawmut chose to give 20 percent weight to seniority, which is correlated with age and therefore favors older Shawmut employees.
Since Plante can present no evidence that he was terminated as a result of his age, he argues instead that Shawmut was trying to remove those Business Bankers with the highest salary. Assuming arguendo that evidence of such a motive would be sufficient to raise a factual issue as to pretext that would defeat summary judgment, there is no evidence that Shawmut’s termination of Plante was based to any degree on his salary. As part of the business reorganization that resulted in the reduction in force plan, Business Bankers were to be paid in the future solely on commission, so their present salaries would have no bearing on their future annual earnings. Moreover, the highest paid Business Banker, Plante’s supervisor Underwood, whose annual salary was $18,700 more than Plante’s, made the cut, thanks to his seniority, even though his overall performance rating was as low as Plante’s.
Plante’s claim of age discrimination is based solely on unsupported conjecture and belief. There is not a shred of evidence permitting a reasonable inference that Shawmut’s nondiscriminatoiy reasons for his termination were pretextual or that age played any adverse role in the decision to terminate him. As a result, summary judgment must be granted to Shawmut on the claim of age discrimination under Chapter 15 IB.
B. Handicap discrimination claim
General Laws c. 151B, §4(16) provides that an employer may not “dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing essential functions of the position involved with reasonable accommodation . . .” UnderG.L.c. 151B, §1(17) the term “handicap” means, “(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment." Major life activity is defined as “functions, including, but not limited to, caring for one’s self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.” G.L.c. 151B, §1(20).
Shawmut contends that the record is devoid of any evidence that the plaintiff was handicapped, within the meaning of the statute, at the time that he was terminated, and, in addition, that there is no evidence which would permit the reasonable inference that plaintiffs lymphoma in 1990 resulted in his dismissal in 1994. While I find that the evidence of handicap discrimination is slim, I do not find it to be nonexistent. Therefore, I must deny Shawmut’s motion for summary judgment on this claim.
There is evidence that Plante suffered from malignant lymphoma in 1990 and that, although his medical treatment appears to have been successful in containing the lymphoma, he still suffers from fatigue and occasional malaise as a result of his bout with that cancer. Even if Plante’s disability from lymphoma were only temporary, that would not prevent him from being considered handicapped within the meaning of G.L. 15IB. Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 2 (1998). In Dartt, the defendant employer appealed from a jury verdict that it unlawfully fired the plaintiff, in violation of G.L.c. 15 IB, because of a handicap — a work-related back injury which the plaintiff sustained two years prior to his discharge. Even though Dartt had returned to full-time work from his back injury, the Court rejected the defendant’s argument that, as a matter of law, he was no longer handicapped within the meaning of G.L.c. 151B:
Not every temporary disability is short lived. Dartt, for example, was unable to work for over two years while he was undergoing two operations for work-related injuries ... While we agree that the evidence was slight, we cannot say as a matter of law that there was insufficient evidence for the jury to conclude that, at the least, Dartt was “regarded by [his employer] as having an impairment."
*648 Id. at 17. Even if Plante, like Dartt, had recovered from his medical problem so as to be able to return full-time to his previous position, I cannot find as a matter of law that Shawmut did not regard Plante as having an impairment. Certainly, Shawmut was aware that he had had malignant lymphoma and there is evidence that it was aware of his lingering health consequences from that condition. Indeed, while admittedly thin, there is stronger evidence here of a handicap than the Supreme Judicial Court found sufficient in Dartt.
Nor can I find as a matter of law that Plante’s alleged handicap played no role in Shawmut’s decision to terminate him. There is evidence that Plante’s health was considered by Shawmut in determining his performance rating in 1993, and that low rating was what caused his termination under the formula devised for the reduction in force plan. Even though the reference to his illness appears to be benign, intended to excuse his earlier poor performance and explain his more recent improvement, the question of whether it was truly benign rather than invidious must be left to the jury, and is not a proper basis for summary judgment.
I recognize that denying summary judgment based on such evidence may discourage an employer from acknowledging an employee’s health-related problems in a performance appraisal, even when its purpose is simply to explain why the employee’s performance has fallen short of previous standards. Yet, as here, when the evidence raises a material issue of fact as to whether the reference to an employee’s impairment is benign or invidious, it is not appropriate to make findings of fact as to the employer’s intent. As long as the evidence permits a darker vision of the employer’s motives, summary judgment may not be granted.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment on the age discrimination claim is ALLOWED, but the defendant’ s motion for summary judgment on the handicap discrimination claim is DENIED.

 This Court need not decide for purposes of this decision whether the more recent decision in Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122 (1997), has effectively amended the “pretext-only” test declared two years earlier in Blare. Even if the Supreme Judicial Court in Ocean Spray truly intended to require the plaintiff in a discrimination case to prove that the employer’s proffered reason for its employment decision was “a pretext for discrimination,” id. at 128, this change in the law would have no bearing on this summaiy judgment decision. Even if the third stage test were now “pretext-plus," evidence that the defendant’s stated reason for its employment decision was, in fact, a pretext would permit a reasonable inference of discrimination sufficient to defeat an employer’s motion for summary judgment. See id. at 129 (summary judgment decision focuses on whether plaintiff will be unable to prove that the stated reason for his firing was a pretext).

 Two of the Business Bankers, at 62 and 58, were already over the 55 year early retirement age. Another was 54.