RONALD A. MITCHELL *vs.* TAC TECHNICAL SERVICES, INC., & others.[1]

No. 98-P-343.

Middlesex. May 16, 2000. - September 14, 2000.

Present: RAPOZA, SMITH, & GILLERMAN, JJ.

*Employment,* Discrimination, Termination. *Anti-Discrimination Law,* Age. *Occupational Safety and Health Administration. Practice, Civil,* Summary judgment. *Words,* "Public policy exception," "At-will employee."

In an employment discrimination action, the judge properly granted summary judgment in favor of the employer on the plaintiff's age discrimination claim, where the plaintiff failed to produce evidence sufficient to establish a prima facie case, or to file an affidavit, pursuant to Mass.R.Civ.P. 56(f), that would have provided a basis for a continuance in order to conduct discovery to obtain such evidence. [92-93]

In a civil action in which an at-will employee claimed that he was wrongfully terminated in retaliation for asking to examine the material safety data sheet for a hazardous chemical present in his workplace, no considerations of public policy, as evidenced by the Occupational Health and Safety Act of 1970 and its corresponding regulations, rose to the level of importance required to justify an exception to the general rule regarding termination of at-will employees; summary judgment was properly granted in favor of the employer. [95]

CIVIL ACTION commenced in the Superior Court Department on July 9, 1996.

The case was heard by *Regina L. Quinlan,* J., on motions for summary judgment.

*Paul A. Manoff* for the plaintiff.

*Michael P. Boudett* for Polaroid Corporation & another.

*Amy M. Soisson* for TAC Technical Services, Inc.

GILLERMAN, J. Claiming that his employment was terminated on account of his age (count I) and that the termination was in violation of public policy and therefore wrongful (count II), the

[1]Polaroid Corporation and David Chenard.

plaintiff brought this action against his employer, TAC Technical Services, Inc. (TAC); Polaroid Corporation (Polaroid), his workplace; and David Chenard, his supervisor at Polaroid.[2] A judge of the Superior Court allowed the defendants' motions for summary judgment. We affirm.

We state the material facts, as developed in the plaintiff's deposition and his two affidavits, in the light most favorable to the plaintiff. The plaintiff, a mold mechanic, began working as an at-will employee at Polaroid on or about April 24, 1995. The plaintiff's job involved the use of isopropanol 99, a cleaning substance used to wipe molds. According to the plaintiff, his first supervisor, Robert Roussos, on several occasions told him that he was happy with the plaintiff's job performance as a mold mechanic.

A week or two after beginning his work at Polaroid, the plaintiff found that fumes from the isopropanol "irritated" him, and he asked Roussos for a material safety data sheet (MSDS) at that time. The plaintiff wanted to assess the "hazardous nature" of the isopropanol. Roussos said he would try to locate one. The plaintiff made the same request on a "number of occasions" thereafter. The plaintiff makes no mention in his affidavit of any additional events during the succeeding months of May and June.

On Thursday, July 6, 1995, the plaintiff again asked Roussos for an MSDS on isopropanol. Roussos said he wanted to see the MSDS also; he intended to complain about the fumes as well. Later that day the plaintiff repeated his request in front of the defendant Chenard, the plaintiff's second supervisor. Chenard was annoyed and interrogated the plaintiff in a hostile manner. Later, Chenard gave the plaintiff the wrong MSDS. The plaintiff discovered the mistake, and Chenard told the plaintiff to look for the MSDS himself. The plaintiff was unable to find it. Chenard said he would get the MSDS directly from the manufacturer. The MSDS arrived from the manufacturer very shortly thereafter and was given to the plaintiff.[3]

At about 11 A.M. on July 6 or July 7 (the record is unclear),

---

[2]The complaint alleges that TAC is an employment agency, that Polaroid was a client and agent of TAC, and that the plaintiff was employed by TAC.

[3]In his deposition the plaintiff testified that Roussos then told him, "He's going to get rid of you." (The statement apparently was intended to refer to Chenard.) If not otherwise admissible, the hearsay statement, being merely Roussos's personal opinion as to how others at Polaroid would be expected to

the plaintiff left work because he "didn't feel well." He did not return to work the following Monday "[b]ecause the hazard still existed and I was sick when I left [work]."

On the following Monday, July 10, he learned that he had been terminated either late Friday or on Monday. On July 10 or 11, he filed a "health complaint" with the Occupational Safety and Health Administration (OSHA), and met with that agency on July 11.[4]

In his affidavit dated May 8, 1997, filed in these proceedings, the plaintiff stated, "I need to conduct discovery in this matter in order to demonstrate *inter alia,* the age of the person that replaced me, when the actual decision was made to discharge me, who made such decision, what statements were made about such decision, what documents are in existence relative to such decision, what conversations . . . Chenard had with Roussos about my performance, etc. I need to take the depositions of . . . Chenard and Roussos."[5] It appears from the record before us that the plaintiff did not conduct any such discovery or take any such depositions.

*Discussion.* The first stage of the established three-stage analysis under the Massachusetts antidiscrimination statute, G. L. c. 151B, puts the burden on the plaintiff to establish a prima facie case of discrimination. *Abramian* v. *President & Fellows of Harvard College,* 432 Mass. 107, 116 (2000). In an age discrimination case, this requires the plaintiff to establish that he was (i) over forty; (ii) doing his job acceptably; (iii) fired; and (iv) replaced by a younger person. *Tardanico* v. *Aetna Life & Cas. Co.,* 41 Mass. App. Ct. 443, 447 n.4 (1996). The plaintiff appears to have satisfied the first three conditions, but

act, does not fall within the exception described in *Ruszcyk* v. *Secretary of Pub. Safety,* 401 Mass. 418, 420, 423 (1988) (a statement by an employee "concerning a matter within the scope of his . . . employment"). The plaintiff did not obtain an affidavit from Roussos, nor did he take Roussos's deposition. Hearsay in an affidavit is "unacceptable to defeat summary judgment," *Madsen* v. *Erwin,* 395 Mass. 715, 721 (1985), and the reasoning underlying that rule — the desirability of avoiding a futile trial for lack of competent evidence — is equally applicable to the hearsay testimony in a deposition. See *Flesner* v. *Technical Communications Corp.,* 410 Mass. 805, 817 (1991).

[4]While the record is unclear exactly when the plaintiff was terminated, there does not appear to be anything in the record to suggest that the termination occurred *after* Polaroid became aware that the plaintiff had filed a complaint with OSHA.

[5]The plaintiff's brief to this court reiterates that the plaintiff had "hoped" that through discovery he would show that a younger man replaced him.

not the fourth. As noted above, the plaintiff acknowledged that he required discovery in order to establish "the age of the person that replaced" him. The plaintiff attempted no such discovery, and he filed no affidavit pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974), that could provide a basis for a continuance in order to take the needed depositions. In these circumstances the failure to file the rule 56(f) affidavit was "fatal." See *Baker* v. *Monga*, 32 Mass. App. Ct. 450, 453 (1992). The fourth condition not having been fulfilled, the plaintiff did not survive stage one of his discrimination claim. There was no error in dismissing count I.

Count II — the alleged public policy exception to the rule governing at-will employees — presents a quite different question. We start with the fact that the public policy exception to the general rule — that an at-will employee may be terminated with or without cause — is quite narrow. *Merola* v. *Exergen Corp.*, 423 Mass. 461, 464 (1996). See *King* v. *Driscoll*, 418 Mass. 576, 582-583 (1994), describing instances where the exception is available, and concluding "[t]his court consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would 'convert the general rule . . . into a rule that requires just cause to terminate an at-will employee.' " *Ibid.*, quoting from *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 150 (1989).

The plaintiff points to the Occupational Health and Safety Act of 1970, 29 U.S.C. §§ 651 et seq. (1994) (act), as evidence of a strong Federal policy of providing a safe workplace to employees. For that reason, the argument continues, the act provides the basis for applying the public policy exception to the Massachusetts common law regarding at-will employment. More particularly, the plaintiff points to 29 C.F.R. § 1977.12(a) (1999), which discusses § 11(c) of the act. Section 11(c) of the act protects employees, inter alia, from discrimination, or discharge, occurring because of the exercise "of any right afforded by this Act." See 29 C.F.R. § 1977.3(d). Section 1977.12(a) continues: "Certain rights are explicitly provided in the Act; for example, there is a right to participate as a party in enforcement proceedings (section 10). Certain other rights exist by necessary implication. For example, employees may request information from the Occupational Safety and Health Administration; such requests would constitute the exercise of a right afforded by the Act. Likewise, employees interviewed by agents

of the Secretary in the course of inspections or investigations could not subsequently be discriminated against because of their cooperation."

Subsection (b)(1) of 29 C.F.R. § 1977.12 continues the discussion of § 11(c) of the act: "On the other hand, review of the Act and examination of the legislative history discloses that, as a general matter, *there is no right afforded by the Act which would entitle employees to walk off the job because of potential unsafe conditions at the workplace.* Hazardous conditions which may be violative of the Act will ordinarily be corrected by the employer, once brought to his attention. If corrections are not accomplished, or if there is dispute about the existence of a hazard, the employee will normally have opportunity to request inspection of the workplace pursuant to section 8(f) of the Act, or to seek the assistance of other public agencies which have responsibility in the field of safety and health. Under such circumstances, therefore, *an employer would not ordinarily be in violation of section 11(c) by taking action to discipline an employee for refusing to perform normal job activities because of alleged safety or health hazards.*" (Emphases added.) See *Marshall* v. *Daniel Constr. Co.,* 563 F.2d 707, 716 (5th Cir. 1977) ("[w]hen adopting OSHA, Congress deliberately sought to achieve job safety while maintaining proper employer-employee relations").

One further regulation bears on this discussion. 29 C.F.R. § 1910.1200(g)(8) (1999) provides that employers "shall maintain in the workplace copies of the required material safety data sheets for each hazardous chemical, and shall ensure that they are readily accessible during each work shift to employees when they are in their work area(s)."

We consider these regulations in the context of the facts alleged by the plaintiff. After his initial request, within a week or two after his arrival, to see the MSDS for isopropanol, he subsequently made several additional requests. Then, on July 6 or 7, after some difficulty, the plaintiff obtained a copy of the MSDS, and on that same day he left work because he was not feeling well. He did not return to work. On the following Monday he learned that he had been terminated. Thereupon he filed a complaint with OSHA, and met with OSHA officials on Tuesday, July 11.

On these facts the plaintiff's claim is quite narrow. He says in his brief, "Plaintiff is not claiming that he was discharged in

retaliation for going to OSHA, only that he was discharged in retaliation for asking to see the MSDS sheet. Since he had a legal right to see the sheet, and since his request to see the sheet was a good faith attempt to resolve matters, prior to going to OSHA, it makes no sense to hold that his discharge was merely an internal matter." The plaintiff offers 29 C.F.R. § 1977.12(a), quoted above, in support of this proposition.

Without doubt 29 C.F.R. § 1910.1200(g)(8), quoted above, imposes on Polaroid the obligation to make the sheets "readily accessible" to its employees and, by implication, there is the corresponding "right" of an employee to see the sheets. It is a different matter to argue that the employee's "right" to see the sheets is of sufficient public importance to require a modification of the rules governing employees at will.

To put the matter in terms of 29 C.F.R. § 1977.12(b)(1): Polaroid's obligation to make the sheets accessible to its employees did not create a corresponding right "afforded by the Act which would entitle employees to walk off the job because of potential unsafe conditions at the workplace. . . . [Consequently,] an employer would not ordinarily be in violation of section 11(c) by taking action to discipline an employee for refusing to perform normal job activities because of alleged safety or health hazards." The employee's remedy is to request an inspection of the workplace pursuant to section 8(f) of the act.

Taking the case most favorably to the plaintiff, as we must, we do not think that the plaintiff's "right" to examine the sheets as a result of his apprehension of "potential unsafe conditions at the workplace" so clearly created a "right afforded by the act" that the courts of this Commonwealth are bound to recognize that "right" as "a source of well-defined public policy sufficient to modify the general at-will employment rule," *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. 469, 474 (1992) (Massachusetts regulation regarding the responsibilities of a registered nurse is an insufficient source of public policy to modify the general at-will employment rule), nor does it "rise to the level of importance required to justify an exception to the general rule regarding termination of employees at will." *King* v. *Driscoll*, 418 Mass. at 584.

*Judgment affirmed.*