James Waite *vs.* Goal Systems International, Inc.

No. 99-P-2092.

Norfolk. January 15, 2002. - September 5, 2002.

Present: Jacobs, Gillerman, & McHugh, JJ.

*Anti-Discrimination Law,* Age. *Practice, Civil,* Judgment notwithstanding
verdict, New trial.

In an age discrimination action, the judge erred in granting judgment
notwithstanding the verdict in favor of the defendant employer, where the
evidence, viewed in the light most favorable to the plaintiff, was sufficient
to support a finding that at least one of the reasons advanced by the
employer for its decision to terminate the plaintiff employee was false,
which falsity alone would permit a jury to infer that the employer was
covering up a discriminatory animus which was the determinative cause of
the employee's discharge [703-705]; and where the evidence reasonably
supported an inference that the employee had been replaced, and that the
employee was at least similarly qualified with respect to one or more of
the new hires [705-706].
This court discerned no abuse of discretion in the order of the judge in an age
discrimination action for a new trial, on the limited record available.
[706-707]

Civil action commenced in the Superior Court Department on
October 23, 1991.

The case was tried before *Nonnie S. Burnes,* J., and a motion
for judgment notwithstanding the verdict or, alternatively, for
new trial or remittitur was heard by her.

*Douglas R. MacDonald* for the plaintiff.

*Margaret M. Pinkham* for the defendant.

Jacobs, J. After a Superior Court jury returned a verdict for
the plaintiff, James Waite, in his age discrimination action
brought under G. L. c. 151B, § 4, against the defendant, Goal
Systems International, Inc. (Goal), the judge allowed

Goal's motion for judgment notwithstanding the verdict.[1] The judge also entered a conditional ruling allowing Goal's alternative motion for a new trial in the event that the judgment notwithstanding the verdict is set aside.[2]

*Standard of review.* "To test whether allowance of a motion for judgment notwithstanding the verdict was correct (Mass.R. Civ.P. 50(b), [as amended, 428 Mass. 1402 (1998),]) we inquire whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury could reasonably return a verdict in favor of the plaintiff, i.e., whether from the evidence it was possible to draw enough reasonable inferences to make out the elements of the plaintiff's case." *Hall* v. *Horizon House Microwave, Inc.,* 24 Mass. App. Ct. 84, 89 (1987). The review of a judge's ruling on a motion for judgment notwithstanding the verdict involves the same standard as a review of a motion for a directed verdict. See *Miles* v. *Edward O. Tabor, M.D., Inc.,* 387 Mass. 783, 785-786 (1982). Accordingly, we construe the evidence in the light most favorable to the plaintiff, Waite. See *Barbosa* v. *Hopper Feeds, Inc.,* 404 Mass. 610, 613 (1989).

*Factual background.* After having been employed in the computer industry for almost thirty years, Waite, in late March of 1989, was hired by Essential Software, Inc. (Essential), to open and operate a sales office based in Boston for a new territory comprising the northeastern part of the United States and the eastern part of the Canada. Essential's principal sales product was a computer operating system generally appropriate for large businesses. James Garret was directly responsible for hiring Waite and supervising him until Essential was acquired by Goal in early February of 1990. Garret believed that Waite had done a satisfactory job throughout the time that he had supervised him, and, aware that Waite "had to start from scratch," was "delighted" with the amount of his sales during

[1]The jury awarded the plaintiff $75,000 in lost earnings and $26,701 in punitive damages, plus attorney's fees. The judge's memorandum of decision indicates that the parties had stipulated to a reduction of $15,000 in any compensatory damages awarded based upon mitigation by Waite of his damages.

[2]The conditional ruling was entered in accordance with Mass.R.Civ.P. 50(c)(1), 365 Mass. 814 (1974).

those ten months. Until its acquisition of Essential, Goal had specialized in selling a computer operating system geared toward smaller companies than those serviced by Essential. At the time it was acquired, Essential employed six salespersons, including Waite, in an "eastern region" that encompassed Waite's territory. At the same time, Goal had five sales representatives working in Waite's territory, four of whom had experience in selling the same operating system sold by Essential. Within a day or two of the effective date of acquiring Essential, Goal discharged three of the six Essential employees serving the eastern region, including Waite. Each of those discharged was over fifty years old and had produced lower dollar sales during the period between the time of Waite's hiring and December 31, 1989, than the three salespersons who were retained. At least one of the retained Essential salespersons and four of the five Goal sales representatives covering Waite's territory were well under fifty years of age at the time of the acquisition.[3] Goal opened a Boston office in April, 1990, and shortly thereafter hired three persons, ages 30, 34, and 35. At least one of those persons was hired to sell the same type of operating systems as was previously sold by Waite.

*The trial framework.* This action was submitted to the jury under the three-stage order of proof recognized in *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 134-136, 138-139 (1976), and recently limited to questions of law and summary judgment analysis by *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 507-508 (2001)[4] ("The burden shifting rules involve questions of law more appropriately left

---

[3]The record does not reveal the ages of two of the retained Essential salespersons.

[4]See *Blare* v. *Husky Injection Molding Systems Boston, Inc.*, 419 Mass. 437, 440-443 (1995), for an articulation of the now familiar approach to actions under G. L. c. 151B, § 4, where there is no direct evidence of discrimination. In summary and in context, that formulation, in the first stage, imposes upon the employee a burden of establishing a prima facie case of discrimination by showing that (1) he is within a protected class of persons (over forty years of age) (G. L. c. 151B, §§ 1[8] and 4[1B]); (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer attempted to fill *his* position by hiring another individual with qualifications similar to his. In the second stage, the employer can rebut the presumption established in the first stage by articulating a legitimate, nondiscriminatory reason or reasons for

to the trial judge to decide"). See *Ventresco* v. *Liberty Mut. Ins. Co.*, *ante* 201, 209 (2002). As to the first stage, the parties stipulated to the first two elements of the prima facie case Waite was required to prove by agreeing that he was between the ages of 40 and 70 at the time Goal terminated his employment. In response to special questions, the jury essentially concluded that the last two elements had been established by finding that Waite had performed his job at an acceptable level before his termination and that he was replaced by "a younger individual or individuals with qualifications similar to [his]." With respect to the second and third stages of the formulation, the jury found that Goal had articulated legitimate, nondiscriminatory "reason(s)" for discharging Waite and that Waite had proved "that the reason offered by Goal . . . was not the real reason for . . . Waite's discharge." Additionally, the jury found that Goal's conduct had caused Waite to sustain damages, and proceeded to assess those damages.

In a memorandum addressing Goal's motion for judgment notwithstanding the verdict, or alternatively for a new trial, the judge concluded that Waite did not meet his burden of proof with respect to pretext (the third stage) and allowed the motion for judgment notwithstanding the verdict. In so doing, the judge indicated there was no need to examine the issues related to the prima facie stage of the case. She also determined that the verdict was against the weight of the evidence and that the case "should be presented at a new trial, if the judgment notwithstanding the verdict is set aside."

*Discussion.* The issues presented by Waite on appeal are whether he sustained his burdens of proof on pretext and replacement and whether a new trial is warranted.

a. *Pretext.* In *Wheelock College, supra* at 139, the court indicated that a plaintiff could meet his burden of proving unlawful discrimination by establishing that "the [employer's] facially proper reasons given for its action against him were not the real reasons for that action." In *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 117 (2000), the court stated that proof of unlawful discrimination "may be ac-

its employment decision. At the third stage, the employee must show that one or more of the reasons so advanced by the employer was false.

complished by showing that the reasons advanced by the employer for making the adverse decision are not true." In *Lipchitz* v. *Raytheon Co.*, *supra* at 506, the court noted that "the evidence suggested several reasons for [the employer's] decision . . . some of which the jury could have found credible, some of which the jury might have found not credible." The court went on to indicate that to meet her burden of unlawful discrimination, the plaintiff in that case "was not required to disprove every reason articulated by the defendant or suggested in the evidence. . . . She could meet her burden by persuading the fact finder that it was more likely than not that at least one reason was false." *Id.* at 506-507. In concluding that the "evidence does not meet Waite's burden of proof on pretext," the judge in this action did not have the benefit of these evolving interpretations of the pretext requirement.

To the extent that we can determine from the abbreviated record before us,[5] evidence of Goal's reasons for discharging Waite was introduced through the deposition of Steven Murphy, a marketing manager for Goal; the testimony of Robert Williams, Goal's executive director of human resources and administrative services; a letter submitted by Williams to the Massachusetts Commission Against Discrimination; and answers to interrogatories made by Williams on behalf of Goal. Williams, who did not become employed by Goal until after Waite was discharged, wrote in that letter that "Waite was terminated . . . due to a duplication and redundancy of services being performed." In his answers to interrogatories, Williams added that a basis for terminating Waite was that he "had a reputation for messy and incomplete paperwork." Murphy, in his deposition testimony, advanced many additional reasons for Waite's termination. Because Waite was discharged almost immediately upon Goal's acquisition of Essential, Murphy's reasons were drawn entirely from Waite's performance as an Essential employee, information obtained from Garret, and an assessment of Waite based upon claimed meetings with him prior to the

---

[5]The parties did not provide us with a full transcript of the three-day trial. Instead, their respective appendices contain only portions of the testimony, presented in disordered and poorly labeled fashion and with occasional interspersion of one witness's testimony or portions of the judge's instructions within the partial transcript of another witness's testimony.

acquisition. Among the reasons articulated by Murphy were (1) that Waite "had trouble coming up to speed"; (2) Waite's use of "right of cancellation" clauses in his sales agreements which he described as "time bombs," and which he said were not used by the Essential salespeople who were retained by Goal; and (3) Waite's failure to communicate to him an understanding of how "a successful salesperson did his job."

Contrasting with Goal's articulated reasons was the testimony of Garret, who had been retained by Murphy for his "good advice," to the effect that he was satisfied with Waite's performance with Essential, that he was delighted with Waite's sales figures, that Waite's experience in selling was important to him, and that what he saw of Waite's paperwork "was okay." Garret also testified that the cancellation clause used by Waite in his agreements was quite common, and that he had not authorized Waite to use an agreement that had different terms than were used by the other salespeople. He further stated that when Murphy had consulted with him before the acquisition, Murphy was not particularly interested in finding out about any backgrounds of any salesperson. Also, Waite in his testimony denied ever meeting with Murphy or having any direct conversation with him before he was terminated. This evidence, viewed in a light most favorable to the plaintiff, was sufficient to support a finding that at least one of the reasons advanced by Goal was false. Where the evidence was sufficient to establish a prima facie case of discrimination, that falsity alone would permit a jury to infer that Goal was covering up a discriminatory animus which was the determinative cause of Waite's discharge. See *Lipchitz* v. *Raytheon Co.*, 434 Mass. at 501, 504, 506-507 ("From such proof [that at least one reason was false] the fact finder could infer that [the employer's] discriminatory animus was the determinative cause of the adverse employment decision"); *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. at 118.

b. *Replacement by person with similar qualifications.* Although Murphy testified that, as of the date of Goal's acquisition of Essential, Goal had only three open sales positions in the eastern region that were filled by Essential's three highest performers who, along with Goal's sales people, assumed

Waite's responsibilities, the evidence in the case did not compel a jury determination that Waite had not been replaced. There was evidence that Goal had been contemplating other acquisitions at that time; that Goal had opened a Boston office only two months following the acquisition of Essential; and that shortly thereafter, Goal had hired a district manager and two sales persons to cover essentially the same territory for which Waite had been responsible, with one of the new hires working from Boston, Waite's former base. That evidence reasonably would support an inference that Waite had been replaced. Moreover, a jury could infer from the evidence of Waite's extensive experience and sales success, from Garret's choice of him to head the northeast district, and from the fact that Goal anticipated selling from the Boston office the same product as Waite had sold, that Waite was at least "similarly qualified" with respect to one or more of the new hires who were between the ages of 30 and 35. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 446 (1995) (plaintiff established fourth element of first stage with showing that after his termination, employer delegated his duties to employees who were under forty years of age).

Accordingly, we conclude that it was error to allow the motion for judgment notwithstanding the verdict and to enter the ensuing judgment for the defendant.

c. *Motion for a new trial.* The judge's alternative and conditional order for a new trial was based upon her conclusion that "[t]here is no affirmative evidence . . . to support the contention that Waite's discharge was the result of age discrimination." She opined that the verdict therefore was against the weight of the evidence. The standard for determining whether a new trial should be ordered is different from that applicable to a motion for a directed verdict or to a judgment notwithstanding the verdict. See Smith & Zobel, Rules Practice § 59.3 (1977 & Supp. 2002). When ruling on a motion for a new trial a judge is obliged to determine credibility and weigh conflicting evidence, *ibid.*, and must consider the probative force of all the evidence. See *Hartmann* v. *Boston Herald-Traveler Corp.*, 323 Mass. 56, 59-61 (1948). Our duty is to determine whether the judge abused her discretion in granting a

new trial. See *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520-521, cert. denied, 493 U.S. 894 (1989). The absence of a complete transcript (see note 5, *supra*) prevents us from considering all the evidence. Consequently, on the limited record, we discern no abuse of discretion in the judge's order for a new trial.

> *Order allowing defendant's motion for judgment notwithstanding the verdict vacated.*
>
> *Conditional order for a new trial affirmed.*