Mary Shea Knight[1] *vs.* Avon Products, Inc.

Berkshire. November 4, 2002. - January 10, 2003.

Present: Marshall, C.J., Greaney, Spina, Cowin, Sosman, & Cordy, JJ.

*Anti-Discrimination Law,* Age, Termination of employment, Prima facie case, Burden of proof. *Employment,* Discrimination, Termination.

This court concluded that, for purposes of establishing a triable claim of age discrimination under G. L. c. 151B based on unlawful termination of employment, a plaintiff must demonstrate that he or she was replaced by someone who is substantially younger or otherwise present some evidence that supports a reasonable inference that age was a determinative factor in the employer's decision. [414]

Statement that a disparity of less than five years between the age of a terminated employee and the age of the employee's replacement, by itself, is too insignificant to support a prima facie case of age discrimination, but that a plaintiff may still present a triable claim if there is other evidence that the termination occurred in circumstances that would raise a reasonable inference of unlawful discrimination and that would permit a jury to find that age was a determinative cause in the termination. [422-426]

At the trial of an age discrimination in employment case in which the evidence warranted a finding that the plaintiff, who was over forty years of age, had been replaced by a person who was also over forty years of age but twenty-eight months younger than the plaintiff, the employer was entitled to judgment as matter of law, where there was no additional evidence presented that would permit an inference that a discriminatory animus as to age existed on the part of the employer and motivated the plaintiff's termination. [426-427]

Civil action commenced in the Superior Court Department on August 4, 1997.

The case was tried before *Daniel A. Ford,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Cornelius J. Moriarty, II (Charles K. Stephenson* with him) for the plaintiff.

[1]The plaintiff's husband, Daniel Knight, whose claim for loss of consortium was decided in favor of the defendant, Avon Products, Inc. (Avon), on a motion for summary judgment has not been appealed, and he is not a party to this appeal.

*James F. Kavanaugh, Jr. (Stephen S. Churchill* with him) for the defendant.

*Christine Hughes,* for New England Legal Foundation & another, amici curiae, submitted a brief.

*Steven S. Locke,* for Massachusetts Commission Against Discrimination, amicus curiae, submitted a brief.

GREANEY, J. We granted an application for direct appellate review filed by the defendant, Avon Products, Inc. (Avon), to decide whether a plaintiff in an indirect evidence case of age discrimination may satisfy the elements of her prima facie case in the absence of a showing that she was replaced by a substantially younger person. A jury in the Superior Court determined that the plaintiff's termination from her position as a district sales manager for Avon violated G. L. c. 151B, § 4 (1B),[2] and awarded her a total of $795,000 in damages. The trial judge thereafter denied Avon's motions for judgment notwithstanding the verdict and for a new trial, but reduced various amounts of the damages award. The plaintiff accepted the order of remittitur, and an amended judgment ultimately was entered awarding damages in the amount of $633,000. The judge also denied the plaintiff's request for multiple damages pursuant to G. L. c. 151B, § 9. Both parties have appealed. We conclude that, for purposes of establishing a triable claim of age discrimination under G. L. c. 151B based on unlawful termination, a plaintiff must demonstrate that he or she was replaced by someone who is substantially younger or otherwise present some evidence that supports a reasonable inference that age was a determinative factor in the employer's decision. For reasons we shall describe, the plaintiff's evidence was insufficient for the issue of age discrimination to be decided by the jury, and Avon's motion for judgment notwithstanding the verdict should have been allowed. Accordingly, we reverse the judgment, set aside the jury verdict, and direct the entry of a judgment for Avon.

---

[2]General Laws c. 151B, § 4 (1B), provides: "It shall be an unlawful practice . . . [f]or an employer . . . because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

The evidence most favorable to the plaintiff, see *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 312 (1993), warranted the jury in finding the following facts. The plaintiff is married with four children. At the time she applied for a position with Avon, the plaintiff's husband had been seriously injured in an accident; her eldest child, who lived at home, was losing her eyesight due to a degenerative eye condition; and her two youngest children, twins, were under six years of age. The plaintiff owned and operated two stores, one in Pittsfield and the other in Lenox, at which she sold cosmetics, skin care and bath products, fragrances, and fashion accessories and also provided customer services such as on-site fashion and cosmetic consultations.

In October, 1993, the plaintiff began working for Avon as a district sales manager in District 2267 (the Northampton district). Because the plaintiff lived in Pittsfield, her employment in the Northampton district required her to commute a great distance each day. The plaintiff was forty-four years of age when hired by Avon.

Before being hired, the plaintiff disclosed the existence of her two stores to her direct supervisor, Helen O'Connell, the division sales manager for Avon's Patriot division (encompassing all of Massachusetts except for Boston and Cape Cod), as well as to Barbara Foster, Avon's regional human services manager. It was agreed that, if hired by Avon, the plaintiff would close her Lenox store and turn the operation of her Pittsfield store over to her daughter. Neither O'Connell nor Foster expressed any objection to this plan. In December, 1993, O'Connell was replaced by Carole Valvo, who also was aware from the outset of the plaintiff's continued ownership of the Pittsfield store. On one occasion, the plaintiff gave Valvo a perfume atomizer, which she identified as an item sold in the store at retail. Valvo promised to visit the store sometime in the future and expressed no reservations about the plaintiff's continued ownership of the store.

Avon had twenty district sales managers, including the plaintiff, operating within the Patriot Division. As a district sales manager, the plaintiff was responsible for recruiting, training, and motivating independent Avon sales representatives throughout her district. The plaintiff's performance evaluations

were all positive. In 1994, after only one year as a district sales manager, she was admitted to Avon's "Circle of Excellence" in recognition of her role in placing her district among the top ten per cent in the region for sales increases. Valvo told the plaintiff, "If you keep doing what you're doing . . . you have a great future."

In October, 1994, while driving home from work, the plaintiff experienced a bout of acute chest pain. Later that evening, she sought medical treatment and was told that her pain was most likely due to muscle strain. A follow-up physical examination, however, revealed a previously undiagnosed thyroid condition. Although the plaintiff was placed on drug therapy, her condition improved only somewhat. On April 25, 1995, at a meeting for the purpose of evaluating the plaintiff's job performance, the plaintiff informed Valvo that her treating physician had arranged for a thyroid scan to rule out the possibility of thyroid cancer. The plaintiff later reported to Valvo that the scan indicated noncancerous nodes on her thyroid that would require monitoring, but that she intended to seek a second physician's opinion and a biopsy.

Shortly after the April meeting, Valvo informed the plaintiff that "there was going to be an opening" in the district sales manager position for District 2271 (the Pittsfield district). Valvo asked the plaintiff if she would be interested in the Pittsfield position. Valvo stated, however, that "she would like" the plaintiff to run the Pittsfield and the Northampton districts, temporarily, for extra pay. Valvo told the plaintiff that this situation was to remain "top secret" for a few weeks. In response to the plaintiff's questions, Valvo informed the plaintiff that the district sales manager currently running the Pittsfield district had not "been doing her job," and that one of the top sales representatives in the Pittsfield district, Sandra Houghtlin, "was not qualified and no one in that district was qualified to take over." The plaintiff specifically had asked Valvo about Houghtlin because the plaintiff felt that Houghtlin would be in line for the job. The plaintiff agreed to run both districts and, on May 10, 1995, the plaintiff was designated interim assisting district sales manager for the Pittsfield district.

On May 22, 1995, at a President's Club meeting and dinner

held in honor of top Avon representatives, Valvo introduced the plaintiff to Mar-E Bean, a twenty-four year old recent college graduate. Valvo informed the plaintiff that Bean had been hired to be a district sales manager and, furthermore, that the plaintiff was to train her. When the plaintiff asked to which geographical district Bean was assigned, Valvo told the plaintiff that Bean was to be a "floater." The plaintiff had never heard of the term "floater" before. To the best of her knowledge, all Avon district sales managers were assigned to particular geographical districts. Thereafter, the plaintiff diligently trained Bean and simultaneously managed the Northampton and the Pittsfield districts. According to the plaintiff, "I . . . met [Bean] on a daily basis and took [Bean] on rounds with me, showed [Bean] all the ropes, I taught [Bean] everything to do."

On June 16, 1995, Avon sent a letter notifying its sales representatives in the Northampton district that the plaintiff had been reassigned as sales manager of the Pittsfield district and that Bean was to be the new district sales manager in the Northampton district. The plaintiff testified that she did not recall a similar letter being sent to Avon sales representatives in the Pittsfield district, notifying them that she was taking over as the sales manager for that district. However, the evidence indicated that on the same date (June 16, 1995), representatives in the Pittsfield district were advised that the plaintiff was the new sales manager for the district. Further, the plaintiff admitted that she wanted to be the manager of the Pittsfield district (which was closer to her home than the Northampton district), that Valvo told her that Bean was "flexible to go either way, to Northampton or to Pittsfield," and that sometime prior to June, the plaintiff chose to accept the Pittsfield district.

On August 3, 1995, Valvo met the plaintiff in Pittsfield and informed her that she was terminated. Valvo explained that an unidentified person had written a letter to Avon's chief executive officer, complaining that the plaintiff "had a store and sold Mary Kay[3] cosmetics in it." The plaintiff expressed shock, stating to Valvo that "everyone in Avon knows that I have a store. . . . You know that and everyone at Avon has always

---

[3]The specific allegation that the plaintiff's store sold "Mary Kay" cosmetics was unsupported by the evidence at trial.

known that." Valvo flatly denied to the plaintiff any prior knowledge on her part of the store's existence.

Over the next few days, the plaintiff, Valvo, and Foster participated in three-way telephone calls directed toward saving the plaintiff's job. During these conversations, a number of conditions were suggested, including that the plaintiff remove her name from the store's sign and business forms and terminate any connection, financial or advisory, with the store. The plaintiff left Foster a voice mail message in which she offered to use the store location as a training center for Avon and a meeting place for Avon sales representatives. Foster never responded to that offer. Finally, negotiations stalled. Foster reconfirmed the plaintiff's termination, refused to discuss the matter further, and called the plaintiff "naive." Houghtlin, the sales representative whom Valvo previously had dismissed as "unqualified," and whom Valvo had indicated to the plaintiff would not get the Pittsfield position, was then designated interim district sales manager of the Pittsfield district. In January, 1996, that appointment was made permanent. The plaintiff was forty-six years of age when she was terminated by Avon. Houghtlin was forty-three years old at the time, twenty-eight months younger than the plaintiff. After the plaintiff's termination, Bean remained as sales manager of the Northampton district.

Avon contended at trial that the plaintiff's termination was a legitimate, nondiscriminatory decision, predicated on Avon's discovery that the plaintiff was operating a business in violation of a company policy prohibiting its employees from having a financial interest in a competing business. In support of its assertion, Avon introduced evidence that the store: bore the plaintiff's name; carried a line of retail cosmetic and skin care products and fashion accessories that directly competed with the Avon line of products; contained a rack posting flyers advertising Nu-Skin, a competing line of direct-marketed merchandise; and carried a limited inventory of Nu-Skin hair products. Avon's evidence indicated that the plaintiff was actively involved in the store's operation even though she was aware, or should have been aware, that Avon's corporate policies forbade such involvement. Valvo testified that she was unaware of the store's existence until the anonymous letter was brought to her

attention. Foster testified that she was unaware of the extent of the plaintiff's involvement with the store after she was hired, and, when confronted with evidence of her apparent conflict of interest, the plaintiff appeared insensitive to the matter and sought compensation for any loss associated with closing the store. Foster specifically denied any age-based animus against the plaintiff and denied that her age played any role in the determination to fire her. Foster testified that enforcing compliance with Avon's nondiscrimination policy was among her specific duties as human resources manager for Avon.

In response, the plaintiff introduced evidence suggesting that Avon's assertion that the plaintiff's ownership in her store was the basis for her termination was untrue and that the reason for her termination was Avon's concern for her poor health (about which there was extensive testimony). The plaintiff's evidence indicated that, when she was hired by Avon, its representatives were aware of, and acquiesced in, her operation of the store. The plaintiff's evidence also relied on the requests by Avon that she run two districts and that she promptly train Bean, as well as the statement by Valvo that Houghtlin would not be selected to manage the Pittsfield district. In view of this evidence, counsel for the plaintiff argued that discriminatory animus and causation should be inferred, because the plaintiff had offered to close her store to save her job, and:

> "[T]hey fired her anyway. Age is a factor here. It's not unusual, you use your common sense, that people who have health problems when they get older sometimes don't recover as quickly. And we had this problem here. And isn't it a coincidence that when she started to have these health problems, that she was asked to train a [twenty-four] year old who then took over the very district that she was running and earning awards in. I tell you . . . [age] certainly played a part here. Is it a coincidence that when she begged and pleaded for her job, they told her, 'you're naive?' So, that brings us, I would suggest to you . . . that this was a pretext for age discrimination."

Avon moved for a directed verdict at the end of the plaintiff's case, and again after the close of evidence, based on the two-fold argument that (1) the plaintiff had failed to show that she

was replaced by someone who was substantially younger, and (2) the plaintiff's own evidence demonstrated that Avon's reason for terminating her was concern over her health, there was no logical nexus between health and age, and, as a result, the plaintiff had failed to establish a basis for the jury to conclude that age discrimination had occurred. Avon's motions were denied.

The judge charged the jury that the ultimate factual issue was whether the plaintiff was terminated because of her age. He then explained the familiar three-stage order of proof set forth by the Supreme Court of the United States in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), and adopted by this court as an aid to the resolution of claims of employment discrimination under G. L. c. 151B. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 134-137 (1976).[4] He instructed the jury of the elements of a prima facie case of age discrimination, as set forth by the Appeals Court, see *Mitchell* v. *TAC Tech. Servs., Inc.*, 50 Mass. App. Ct. 90, 92 (2000); *Tardanico* v. *Aetna Life & Cas. Co.*, 41 Mass. App. Ct. 443, 447 n.4 (1996), requiring the plaintiff to demonstrate that she (1) was a member of the class protected by

---

[4] In the first stage, the plaintiff has the burden to show, by a preponderance of evidence, a prima facie case of discrimination. The elements of the prima facie case will vary depending on, among other things, the type of discrimination alleged and the protected category at issue. In the second stage, the employer may rebut the inference of discrimination created by the prima facie case by articulating a legitimate, nondiscriminatory reason for the termination of the plaintiff's employment. This burden of production is not onerous, and once met, the proceedings have reached the third stage in the order of proof. Under the third and final prong of the analysis, the plaintiff may submit evidence that the defendant's articulated reason for the termination was not the real one, but a pretext, or cover-up, for the discriminatory motive underlying the plaintiff's termination. This allows, but does not compel, the jury to infer discriminatory animus, which remains an essential element of a G. L. c. 151B action that the plaintiff must prove. See *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 116-118 (2000); *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 440-445 (1995). While this analysis provides a useful framework for deciding motions for summary judgment and for a directed verdict, we have recommended that it is not well suited as a model for jury instructions. See *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 508 (2001). Rather, "[w]e encourage trial judges to craft instructions that will focus the jury's attention on the ultimate issues of harm, discriminatory animus and causation . . . ." *Id.*

G. L. c. 151B (that is, over forty years of age)[5]; (2) had performed her job at an acceptable level; (3) was terminated; and (4) was replaced by a similarly or less qualified younger person. He denied Avon's request that the jury be instructed that the plaintiff was required to demonstrate that her replacement was "substantially younger" than she. The judge instructed the jury that "the person who takes the plaintiff's place need not be substantially younger, simply younger is sufficient." Avon properly preserved an objection to the instruction given by the judge and the judge's failure to instruct in accordance with its request.

In response to special questions, the jury determined that the plaintiff had established a prima facie case of age discrimination; that Avon's justification for the plaintiff's termination was untrue and constituted a pretext for age discrimination; and that the plaintiff had suffered both economic loss and emotional distress as a consequence of her termination.

On appeal, Avon claims that it is entitled to judgment as matter of law for two reasons: (1) the plaintiff was required to show as part of her prima facie case that her replacement was "substantially younger" and the plaintiff's evidence was insufficient to support a jury's finding that her replacement was Bean (who was substantially younger); and (2) regardless of the proper standard for a prima facie case, the judge should have granted Avon's motion for judgment notwithstanding the verdict because, while the plaintiff's evidence may have persuaded the jury that Avon's stated reason for termination (the plaintiff's alleged competitive business) was a pretext, the evidence pointed only to another reason for her termination (the plaintiff's poor health), which, in the context of an age discrimination claim, is still nondiscriminatory.

1. The evidence most favorable to the plaintiff established that, by the plaintiff's own choice, Bean was appointed manager of the Northampton district, and the plaintiff was given what she wanted, the manager's position in the Pittsfield district closer to home. Thus, the evidence would not warrant a finding

---

[5]Section 1 (8) of G. L. c. 151B provides that "[t]he term 'age' unless a different meaning clearly appears from the context, includes any duration of time since an individual's birth of greater than forty years."

that Bean was the plaintiff's "replacement." Rather, the only finding warranted by the evidence was that Houghtlin replaced the plaintiff, and, as has been indicated, the plaintiff and Houghtlin were both over forty years old and only twenty-eight months apart in age. We now discuss the significance of these facts.

Because direct evidence of discriminatory animus and causation rarely exists, we allow plaintiffs to establish one or both of those elements by indirect circumstantial evidence, following the so-called three-stage order of proof method. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra.* See also note 4, *supra.* The three-stage order of proof does not circumvent the plaintiff's burden to prove all the essential elements of a discrimination claim, but does permit the jury to infer discriminatory animus and causation from proof that an employer has advanced a false reason for the adverse employment decision, in the absence of direct evidence that the actual motivation was discrimination. See *Lipchitz* v. *Raytheon Co.,* 434 Mass. 493, 502 (2001). A plaintiff who cannot establish a prima facie case (and who otherwise lacks evidence of discrimination), however, cannot survive the first stage of his claim. Whether a plaintiff has proffered evidence sufficient to establish a prima facie case is a question of law and depends on the specific facts of a case. See *id.* at 508; *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 441 (1995).

We have not had occasion to specify what constitutes the pivotal fourth element necessary for a plaintiff to establish a prima facie claim of age discrimination under G. L. c. 151B, where, as here, a plaintiff has been terminated and replaced by another person. As recognized by the judge, the Appeals Court has stated that such a plaintiff must demonstrate that the replacement was younger than the plaintiff. See *Waite* v. *Goal Sys. Int'l, Inc.,* 55 Mass. App. Ct. 700, 703 (2002); *Mitchell* v. *TAC Tech. Servs., Inc., supra; Tardanico* v. *Aetna Life & Cas. Co., supra.* See also *Powers* v. *H.B. Smith Co.,* 42 Mass. App. Ct. 657, 661 (1997) (replaced by a similarly or less qualified younger person). These decisions, however, did not involve circumstances where the replacement was near to the plaintiff in age and, therefore, are not helpful on the issue before us.

In *O'Connor* v. *Consolidated Coin Caterers Corp.,* 517 U.S.

308, 311-312 (1996), the United States Supreme Court clarified a plaintiff's prima facie burden of proof under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, and announced that a plaintiff's burden was to establish a substantial age difference between the plaintiff and the replacement. The Supreme Court reasoned that the role of the prima facie case is to support an inference of discrimination in the absence of a response from the employer. Once proved, a prima facie case requires a judgment in favor of the plaintiff unless rebutted. There must, therefore, "be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a 'legally mandatory, rebuttable presumption.' " *Id.*, quoting *Texas Dep't of Community Affairs* v. *Burdine*, 450 U.S. 248, 254 n.7 (1981). We agree.

Age, unlike gender or race, is a relative term and not an immutable characteristic. As acknowledged by the plaintiff, the greater the difference in age, the stronger the possible inference of discrimination. The converse is also true — the smaller the age disparity, the weaker the possible inference of discrimination. At some point, an age difference simply is too insignificant to make a difference. Thus, the fact that a person over forty, who is performing adequately, is terminated and replaced by someone who is younger, but insignificantly so, by itself permits no inference that age was a determining factor in the plaintiff's termination. See *id.* at 312. As concluded by the Supreme Court, age discrimination may only logically be inferred when a plaintiff in the protected class, who is performing adequately, is terminated and replaced by someone who is "substantially younger." *Id.* at 313.

We recognize that our discrimination statute should be "construed liberally for the accomplishment of the [remedial] purposes" of the statute. G. L. c. 151B, § 9. See *Dahill* v. *Police Dep't of Boston*, 434 Mass. 233, 240 (2001). At the same time, however, we are obliged, in an age discrimination case where the age of the replacement has significance, to articulate a standard that meaningfully separates cases that should go to the

jury from those that should not.[6] In the absence of such a standard, everyone over forty years old who is terminated and replaced would make out a prima facie case so long as the replacement is younger, even though the age gap was so insubstantial as to be meaningless. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra* at 135-136 n.6.

The Supreme Court's *O'Connor* decision shed no light on the size of the age differential required to establish a "substantial" disparity that would support a prima facie case of age discrimination, and the United States Courts of Appeals that have interpreted it are considerably divided on the issue.[7] We prefer the decisions that fix the age difference at five years or over. See *Williams* v. *Raytheon Co.*, 220 F.3d 16, 20 (1st Cir. 2000) (noting five-year requirement; finding three-year age disparity insubstantial); *Bush* v. *Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998) (less than five years insubstantial). See also *Schiltz* v. *Burlington N. R.R.*, 115 F.3d 1407, 1413 (8th Cir. 1997) (no prima facie case when largest age disparity between

[6]One original purpose behind laws prohibiting discrimination based on age in the Commonwealth may have been the reduction of unemployment among persons in the workforce over a certain age. See Report of the Legislative Research Council, 1957 House Doc. No. 3000 (entitled "Means of Absorbing the Labor Surplus in Older Age Groups"). See also St. 1937, c. 367, inserting G. L. c. 149, §§ 1, 24A-24J (unlawful to dismiss or refuse to employ persons from forty-five to sixty-five years of age; St. 1950, c. 697 (amending G. L. c. 151B to include prohibition against discrimination based on age [protected class defined as those between forty-five to sixty-five years of age]). The Legislature since has expanded the class of protected persons. See St. 1966, c. 405 (extending class protected by G. L. c. 151B to include those aged forty to sixty-five years of age); St. 1984, c. 266, § 1 (extending class protected by G. L. c. 149, § 24A, to persons forty to sixty-five years of age). It is now recognized that the primary purposes of G. L. c. 151B, § 4 (1B), are to protect citizens of the Commonwealth from adverse employment decisions based on their age, see *Cormier* v. *Pezrow New England, Inc.*, 437 Mass. 302, 304-305 (2002), and to discourage, and punish, unlawful discrimination in the workplace, see *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 321 (1993). Thus, the fact that the plaintiff and her replacement both are within the protected age class has no relevance on the issue whether G. L. c. 151B was violated in this case.

[7]See, e.g., *EEOC* v. *Regents of the Univ. of Wis. Sys.* 288 F.3d 296, 302 (7th Cir. 2002) (less than ten years insufficient); *Tarshis* v. *Riese Org.*, 211 F.3d 30, 38 (2d Cir. 2000) (eight years sufficient); *Carter* v. *Decisionone Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997) (three-year differential sufficient).

plaintiff and six hirees was five years, and two were older than plaintiff). We recognize that a line has to be drawn somewhere. Otherwise, the byproduct of an essentially undefined standard could be inconsistent and possibly capricious jury verdicts with a lack of predictability for those claiming to be aggrieved, employers, and attorneys for both sides. We conclude that an age disparity of less than five years, by *itself*, is too insignificant to support a prima facie case of age discrimination.[8]

We now explain the "by itself" qualification. The fact that someone over forty years old is terminated and replaced by someone less than five years younger, of course, does not by itself negate the possibility that the termination was motivated by the plaintiff's age. Although a bright-line standard of five years is useful, it should not be used to exclude a plaintiff who might otherwise have evidence showing that age was a factor. As was perceptively stated by one court: "[T]he line we draw is not so bright as to exclude cases where the gap is smaller but evidence nevertheless reveals the employer's decision to be motivated by the plaintiff's age." *Hartley* v. *Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997). In an indirect evidence case when the disparity in age is less than five years, therefore, a plaintiff still may present a triable claim if there is other evidence that the termination occurred in circumstances that would raise a reasonable inference of unlawful age discrimination. This burden would require the plaintiff to present some evidence to permit the jury to find that age was a

---

[8]The Massachusetts Commission Against Discrimination (MCAD) has submitted an amicus brief in this case, presenting its position that the fourth element may be satisfied by a showing that the plaintiff was replaced by someone "with qualifications similar to the plaintiff's," regardless of age. See *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 116 (2000); *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, *supra* at 441. We accord substantial deference to MCAD policies and decisions. See *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 536 (2001). In a case of this type, however, for the reasons explained above, we do not accept the MCAD's position. Our analysis does not impose an onerous burden on a plaintiff but does recognize the legal importance of a prima facie case and the need to have some meaningful criteria to support a claim of age discrimination that is based on indirect evidence when the age difference between the plaintiff and the replacement worker is insubstantial.

determinative cause in the termination.[9] It is irrelevant that the employer can present evidence tending to show that there was no actionable misconduct. The central question is whether the plaintiff has established a logical basis for a jury to find that the employer would not have taken the same action had the employee been of a younger age.

Because, as has been stated, the only finding warranted by the evidence was that Houghtlin replaced the plaintiff, in order to establish a prima facie case, the plaintiff had to present additional evidence to permit an inference that a discriminatory animus as to age existed on Avon's part and motivated her termination. There was no such evidence. The evidence warranted a finding (which the jury appear to have made) that Avon's stated reason for the termination (the plaintiff's competitive store) was false. The evidence also warranted a finding that the plaintiff may have been discharged because of Avon's concerns over her health. Neither of these findings, however, would support the inference that age discrimination existed. Although the evidence indicated that Valvo may have lied to the plaintiff about Houghtlin being unqualified to manage the Pittsfield district, that fact does not permit a finding that Avon implemented a strategy to move Bean into the plaintiff's former position in the Northampton district, so the plaintiff could be replaced by Houghtlin in the Pittsfield district, with the proximity of their ages disguising an unlawful motive. Rather, the undisputed evidence was that Avon gave the plaintiff the choice between her original Northampton district and the more conveniently located Pittsfield district, with the understanding that Bean would be assigned to whichever district the plaintiff declined. Thus, the plaintiff's proof fails, as matter of law, to show that, when she was terminated, Avon had a discriminatory intent, motive, or state of mind based on her age and that any such animus was a material and important ingredient in the

---

[9]Examples of such evidence might be that a plaintiff was the oldest employee at a company and the only one not offered a transfer, or that other employees of the plaintiff's age were terminated at the same time. Of course, if there is direct evidence of discrimination, the age gap would not be material, as such a plaintiff would not be relying exclusively on indirect evidence.

discharge.[10] See *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 506 n.19 (2001). Avon is entitled to judgment as matter of law.

2. This conclusion renders it unnecessary to decide the other issues raised by the parties. The judgment is reversed and the jury's verdict set aside. Judgment is to be entered for Avon.

*So ordered.*

---

[10]We reject the plaintiff's suggestion that our decision concerning the "substantially younger" standard should have prospective effect only. See *Payton* v. *Abbott Labs*, 386 Mass. 540, 565-570 (1982). The United States Supreme Court had decided *O'Connor* v. *Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), four years before the trial, and Avon argued throughout the trial that the plaintiff's prima facie case should require a showing that her replacement was "substantially younger." Avon thus is entitled to the benefit of our decision. The plaintiff presumably put in all the evidence she had on the issue of discrimination, and she does not indicate that there is some other existing proof that would assist her case under the standard that we have adopted.